PRESENT—HIRAM WARNER, CHIEF JUSTICE.
H. K. McCAY,
ROBERT P. TRIPPE, } JUDGES.

---

JOHN W. JANES, plaintiff in error, *vs.* CICERO C. CLEG-
HORN, defendant in error.

1. It was the dying request of the mother of an infant that the wife of the plaintiff in error should raise and educate it as her own child, which was acquiesced in by the father. Upon the death of the father the child was in the possession of the plaintiff in error and his wife under this arrangement, when the defendant in error induced the plaintiff to allow the child to visit his family, in an adjoining county, he having married the sister of the deceased father, promising to return it in ten days. He failed to return the child as agreed on, whereupon the writ of *habeas corpus* was sued out by the plaintiff. The court held that the consent of the father to the above stated arrangement was revocable, and as it appeared from his declarations made during the last year of his life, that he had changed his mind, and desired his sister, the wife of defendant, to have the custody and control of the child to raise and educate, it would not interfere with the defendant's possession thereof:

*Held*, that this was error. The possession of the child by the plaintiff in error and his wife, by consent of its father, was prior in point of time, and therefore gave priority of right, of which the consent, under the circum-
VOL. LIV. 2.

stances, that the defendant should take the child on a visit to his family, did not deprive them.

2. Where the parental authority over an infant child is released to another, such release is not revocable without some sufficient legal reason is shown therefor.

3. The evidence in this case does not disclose that the father ever did revoke his consent to the arrangement above set forth.

*Habeas corpus.* Parent and child. Contracts. Before Judge UNDERWOOD. Floyd Superior Court. July Adjourned Term, 1874.

For the facts, see the decision.

C. ROWELL; DABNEY & FOUCHE; SMITH & BRANHAM, for plaintiff in error.

ALEXANDER & WRIGHT, for defendant.

WARNER, Chief Justice.

This was a writ of *habeas corpus* sued out by Janes against the defendant, Cleghorn, to obtain the possession of an infant child named Mary H. Scott, whom the petitioner alleges the defendant, Cleghorn, detains in his custody without lawful warrant or authority. Upon the return of the writ with the defendant's answer thereto, and after hearing the evidence submitted by the respective parties, the court ordered that the custody of the child should remain with the defendant, whereupon Janes, the petitioner, excepted.

There was a good deal of evidence introduced on the hearing before the court, the substantial points of which, in relation to the petitioner's claim, are as follows: The child in controversy is the only child of Captain Dunlap Scott by his second marriage, the father and mother of the child both being dead, the mother having died when the child was seven days old, and which is now three or four years old; the mother of the child and Mrs. Janes, the wife of the petitioner, had been intimate friends, and a short time before her death she expressed her desire that in the event of her death, Mrs. Janes should take

Janes *vs.* Cleghorn.

the child.  Soon after the death of the mother, the child, with the father's consent, was placed in the care and custody of Mrs. Janes, the wife of the petitioner, with the distinct agreement and understanding that she was to have the child, and Janes and wife moved into Scott's house with the child, upon that express condition alone, and remained there until Captain Scott married again, about two years and ten months, Mrs. Janes in the meantime having the entire control of the child as if she was her own child.   After Captain Scott's last marriage, Janes and his wife moved out of Scott's house into another house in the neighborhood, taking the child with them, and continued to remain with them until Captain Scott's death.   Janes and wife have no children of their own. Things remained in this condition, so far as the custody of the child was concerned, until about three weeks prior to the suing out of the writ of *habeas corpus,* when it appears from the evidence in the record that the defendant, Cleghorn, who married the sister of Captain Scott, obtained the consent of Janes and his wife to take the child to Chattooga county, on a visit to his family, promising to return the child in ten days, which he failed to do.   The defendant, in his answer, claims the lawful right to detain the child in his custody, on the ground that his wife is the sister and a blood relative of Captain Scott; that they have no children of their own; that Captain Scott expressed a desire in his lifetime that his sister should have the custody and care of the child, and other excuses, as set forth in the record.   The fact that the defendant, Cleghorn, obtained the possession of the child from Janes and wife for the purpose of making a visit to his family in Chattooga, under a promise to return the child to them in ten days, is not distinctly denied by the defendant.  The court, in its judgment, as set forth in the record, found the facts to be, from the evidence before it, that it was the dying request of the mother of the child that Mrs. Janes should take it, raise and educate it as her own child ; and that Captain Scott, under the most solemn circumstances, with a full knowledge of the facts, acquiesced in it; that Janes and wife took pos-

session of the child under the firm belief that they were to stand in *loco parentis*, and that this opinion of theirs was acquiesced in by Captain Scott, the father. In our judgment, there is sufficient evidence in the record to authorize the court to find as it did as to the facts of the case. But the court also held that this consent and agreement of Captain Scott, the father, was revocable, and that as it appeared from the declarations of Captain Scott, made during the last year of his life, that he had changed his mind, and that his last request was that his sister, Mrs. Cleghorn, should have the custody and control of the child to raise and educate, and therefore that the court would not interfere with Cleghorn's possession of the child. It is apparent, from the evidence in the record, that the parties claiming the possession of this child, and their families, occupy a high social position in the community in which they respectively reside, and that no objections can be urged against either party's having the possession of the child upon that ground.

1. The first question to be considered is whether, under the statement of facts disclosed in the record, the possession of the child by the defendant, Cleghorn, was without lawful warrant or authority as against the claim of the petitioner, Janes, to the possession of the child. There can be no doubt that the child was in the lawful possession and custody of Janes and wife at the death of its father and by his consent. How did the defendant obtain possession of the child from Janes and wife? He obtained possession of the child by the consent of Janes and wife to visit his family, and for no other purpose, under a promise to return the child in ten days, and having thus obtained the possession of the child by their consent for that purpose, he now claims the right to retain the possession of the child for an entirely different purpose—ignoring their right to the possession of the child, and claims the possession of the child in his own right, without any lawful warrant or authority to do so, in our judgment. The possession of the child by Janes and wife by the consent of its father, was prior in point of time to the defendant's pos-

Janes *vs.* Cleghorn.

session, and therefore gave to them the priority of right to its possession, of which their consent, under the circumstances, and for the purpose which it was given for the defendant to take the child to Chattooga county and return her in ten days, did not deprive them.   The refusal to return the child was in violation of the terms and conditions upon which the custody of the child was temporarily intrusted to him by Janes and wife, and therefore he acquired no legal right to the possession of the child by his own wrongful act in not returning the child as he promised to do.   If it was the defendant's purpose, when he obtained the possession of the child under the circumstances before stated, to remove it to Chattooga county so as to change the child's domicil from Floyd to Chattooga, to enable him to be appointed the guardian of the child in the latter county, (the record showing that he has made such application there,) then, we say to Mr. Cleghorn, kindly, but firmly, that the law does not countenance nor will it tolerate any such *sharp practice* as that, in order to change the domicil of an infant child.   It was the moral and legal duty of Mr. Cleghorn to have returned the child to the possession and custody of those from whom he received it, in accordance with his promise to do so, and then if he had any legal claim to the possession of the child, to have prosecuted the same in the courts "decently and in order."   In other words, he should have entered through the straight gate of the law to obtain possession of the child, and not have attempted to climb over it, in some other way.   Therefore, as to the mere legal right to the possession of the child as between the contesting parties, the petitioner was entitled to that possession on the statement of facts disclosed in the record, and it was error in the court in deciding to the contrary thereof.   The view which we have taken of the case would dispose of it for the present, but as we differ with the court below as to the questions of law involved in it, and which may hereafter arise between the parties, we will consider the questions presented in the judgment of the court now.   Two questions are made : First, whether Captain Scott had the legal right to

Janes vs. Cleghorn.

revoke the contract made with Janes and wife, releasing to them his parental authority over his child. Second, does the evidence in the record show that he ever did revoke it during his life?

2. The 1793d section of the Code declares that until majority, the child remains under the control of the father, who is entitled to his services and the proceeds of his labor. The parental power is lost: 1st. By voluntary contract, releasing the right to a third person. 2d. By consenting to the adoption of the child by a third person. 3d. By the failure of the father to provide necessaries for his child, or his abandonment of his family. 4th. By his consent to the child's receiving the proceeds of his own labor, which consent shall be revocable at any time. The court, having found the facts to be as we have already stated, that Scott, the father, released his parental power over his child, to Janes and wife, could he afterwards revoke such release without some good and sufficient legal reason being shown therefor? In our judgment, he could not. Janes and wife took this motherless child, when it was only seventeen days old, under a contract with its father, that Mrs. Janes should take it, raise and educate it as her own child, and now, after she has had all the trouble with it, and it has become of interest to its foster parents, their affections necessarily blended with, and interwoven with its existence and welfare, and fondly clustered around the child, to hold that the parent could captiously, and without good and sufficient legal grounds, revoke his contract and take the child away from them, would be a species of cruelty and bad faith which the law does not recognize or tolerate. That such a contract should not be revocable, may fairly be inferred from the fact that only one of this class of contracts specified in the statute, is made revocable, and that is when the parent consents to his child's receiving the proceeds of his own labor. That a contract made by a parent releasing his parental authority over his child to a third person, may be revoked for good and sufficient legal reasons, we do not doubt, such as bad treatment,

want of social standing, and the like, but nothing of that sort is pretended in this case.

3. The evidence in the record before us does not show that Captain Scott ever *did revoke* the contract made with Janes and wife in respect to his child in their possession, during his life. There is the evidence of several witnesses as to his declarations as to what he *intended* to do with his child, but always in the absence of Janes and wife, and never in their presence. His mere *declarations* as to his intentions, is one thing, his *acts* while in life, is another and much the most significant thing in respect to the revocation of the contract made with Janes and wife. There is no evidence that he ever expressed to them his intention to revoke the contract during his life, and whatever he may have said to others cannot affect the contract made with them, even if he had the legal right to revoke the contract. In any view which we have been enabled to take of this case, our judgment is that the court erred in not restoring the possession and custody of the child to Janes and wife, from whom it is detained by the defendant without lawful warrant or authority.

Judgment reversed.