## JANES *vs.* CLEGHORN.

1. Though one having the custody of an orphan whose parents are both dead, and contesting with another the right to the guardianship of its person, is not a competent witness to establish his own property in the permanent custody as matter of contract with the father, and thus to defeat the application altogether, yet he is competent to prove all that was said or done by either or both of the parents (though this may include the making of such a contract) which may be reasonably calculated to guide the discretion of the appointing power in electing between the candidates for the guardianship, in the event an appointment is to be made; and the court should admit his testimony, restricting its effect to this one purpose.

2. Where two persons have, by writ of *habeas corpus*, contested the right as between themselves to the custody of an infant, and there were two issues in the case, the first whether one of the parties had succeeded to the parental right by contract with the father, and the second whether the other party was not estopped by certain facts from litigating that question in that particular proceeding, and the judgment rendered was, or under the state of facts might properly have been, put on the latter ground alone; and where, afterwards, on an application for letters of guardianship made by the losing party, the alleged contract right comes again in question between the same litigants:

*Held,* that because the *habeas corpus* case was, or could well have been decided on the estoppel, and also because guardianship of the person concerns the interest of the child rather than the interest of the applicant for letters, the former adjudication does not conclude the applicant, on the trial of his application and the *caveat* thereto, from disputing the alleged contract.

Guardian and ward. Parent and child. Witness. Evidence. Judgment. Estoppel. Before Judge BUCHANAN. Floyd Superior Court. March Adjourned Term, 1879.

Cleghorn petitioned the ordinary of Floyd county to be appointed the guardian of his orphan niece, Minnie H. Scott. Janes objected upon the following grounds:

1. Because he holds the possession, custody, and control of the minor by virtue and reason of a contract with said child's father, Dunlap Scott, deceased, and in accordance with the desire of the child's mother, also deceased.

2. Because the supreme court of Georgia has recently decided in reference to this same child, that caveator had a prior and superior right to any one living, to its custody and control, and that even if the father had desired to in-terfere with the possession of caveator, he could not have done so under the circumstances which now exist.

3. Because as caveator stands *in loco parentis* to the child, he alone is entitled to the guardianship of her person.

The ordinary directed that letters of guardianship issue to petitioner on his giving bond and security. Janes appealed to the superior court, and there a verdict was also rendered in favor of Cleghorn. Much evidence was introduced by the respective parties, that of the petitioner showing that he married the aunt of the minor, and was a proper person to be appointed guardian; that of caveator, tending to show a contract by which Dunlap Scott, deceased, the father of the child, a few days after the death of its mother, relinquished it to him permanently, and this in accordance with the earnest wish of Mrs. Scott, expressed shortly before her decease; also showing the proceedings had on the trial of the writ of *habeas corpus* for the child, sued out at the instance of caveator against petitioner. (See 54 *Ga.*, 9.)

The main questions presented were as to the competency of Janes to testify to the contract between himself and Scott under which the child was turned over to the former, the latter having since died, and as to the effect of the *habeas corpus* case above referred to.

Caveator moved for a new trial upon substantially the following, among other grounds:

1. Because the court erred in holding that the caveator was not a competent witness to prove the contract by which the possession and control of the child were turned over to him, or any conversation between himself and Scott, the latter having since died.

It is proper to note that the testimony thus excluded by the court, whilst it covered the contract alluded to, yet also

materially affected the question as to who was the proper person to be appointed guardian, petitioner or caveator.

2. Because the jury disregarded the effect of the judgment in the *habeas corpus* case as an estoppel.

3. Because the verdict was contrary to evidence and the charge of the court.

The motion was overruled, and the caveator excepted.

DABNEY & FOUCHE; C. ROWELL, for plaintiff in error.

ALEXANDER & WRIGHT, for defendant.

BLECKLEY, Justice.

1. There were two separate and distinct issues: one as to the alleged right of the caveator, appealing to strict law; the other as to the best interest of the child, appealing to discretion. Both were on trial at the same time. To the former the caveator was related as a party at interest in a personal and selfish capacity, litigating on his own behalf and for his own benefit; to the latter he was related just as his adversary was related to it, that is as a mere friend to the child, willing to serve it as guardian and to promote its welfare, without money and without price, there being to guardianship of the person no compensation attached. In maintenance of the former issue he was undoubtedly incompetent to prove a contract with the deceased father by which the father relinquished to him the parental right. Such a contract would give him a property in the custody and services of the child during its minority, and for that reason he could not be heard as a witness to establish it in his own favor, the other party to it being dead. Code, §3854. But we see no reason why he could not testify to it in favor of the child as a part of the child's history, not for enforcement as a binding contract, but for adjusting fitly and appropriately the child's future to its past. In case his alleged right should not be made out by other evi-

SUPREME COURT OF GEORGIA.

dence, then the child's interest would be the sole end for
the jury to advance, and in looking to that, the entire his-
tory of its custody and nurture, so far, would be material.
If that history embraced an agreement on the part of the
father with the caveator that the latter might keep the
child until it arrived at majority, and if the jury should
deem him in all respects fit and proper to become the guar-
dian, the father's preference, as manifested by the agree-
ment, together with what was done in consequence of the
agreement, might very reasonably influence the opinion of
the jury in deciding whether, for the true interest of the
child, the caveator ought to be appointed rather than the
applicant.   The footing on which a contestant for the guar-
dianship stood with the father and mother of the child, or
with either, while they were in life, is a consideration of
some importance, and any declaration or act, whether in
the shape of a contract or of something else, which throws
light on the same is relevant.   According to all the evidence,
there is no doubt that the father, in his life-time, placed
the child in the family of the caveator, and that it was still
there at the time of his death.   Whether, in the father's
contemplation, that was a permanent or only a temporary
arrangement for the child, would naturally influence, in
some degree, almost any mind in deciding on the child's
interest in respect to measures for a change.   We think the
testimony of the caveator was admissible, for what it was
worth, as a guide in the exercise of discretion, and that,
instead of rejecting it, the court ought to have admitted it,
with instructions to the jury to confine its effect to that one
purpose.

2. We agree with the court below in thinking that the
judgment in the *habeas corpus* case does not conclude the
applicant from disputing the alleged contract between the
deceased father and the caveator.   That judgment could well
have been rendered irrespective of any such contract.   The
applicant had a permissive custody of the child, derived
from the caveator, as it was insisted, on a promise to return

it, and the *habeas corpus* was sued out by the caveator after the time for returning it had elapsed. The judgment was put in part, and might, under the facts, have been put altogether, on the ground that the applicant was escopped by his promise to return the child, that promise having been the condition on which the caveator parted with the custody temporarily at the applicant's request. The applicant held, so to speak, under the caveator, and whilst so holding could not dispute the latter's title. 54 *Ga.*, 9. Another reason, perhaps, why a judgment rendered between two contestants for the possession of a child, on a writ of *habeas corpus*, should not stand in the way of future proceedings looking to supplying the child with regular guardianship, is, that in the latter the child's need of a guardian and its right to have a guardian are the great and controlling elements, whilst in the former these elements are not necessarily involved. In the tableau of *habeas corpus*, the parties are in the foreground and the child in the background; but in the tableau of guardianship, the arrangement is reversed—the child is the principal figure, and applicants and caveators are secondary and subordinate.

Judgment reversed.