## ROBERTSON *v.* HEATH.

1. Where, on a proceeding by writ of habeas corpus to determine the custody of a child, certain affidavits were offered, and objection was made to them as a whole on the ground that they were irrelevant, hearsay, and stated opinions instead of facts, and many of the statements contained in them were not subject to such objection, there was no error in overruling it.

2. Where the writ of habeas corpus is used as a means of determining the custody of an infant, the better practice is to hear evidence viva voce, or taken by deposition or interrogations, after notice and with

opportunity for cross-examination. But this is not an absolute and inflexible rule, and the presiding judge is vested with discretion as to admitting affidavits under the circumstances of a particular case which render it necessary or proper.

3. On the merits of this case, there was no error in awarding the custody of the child to the father instead of to the maternal grand'mother.

Argued January 25,—Decided March 10, 1909.

Habeas corpus. Before Judge Hammond. Richmond superior court. October 3, 1908.

*Boykin Wright*, for plaintiff in error.

*C. Henry & Rodney S. Cohen*, contra.

LUMPKIN, J. C. F. Heath obtained a writ of habeas corpus against Mrs. S. E. Robertson, for the purpose of securing the custody of his child, a girl four years of age, alleged to be illegally held by the respondent, in disregard of his parental rights. The respondent, who was the maternal grandmother of the child, claimed that the father had relinquished to her his parental control, by a valid and binding contract, when the child was only a few weeks old, and after the death of its mother. The father, who had remarried, denied this. The evidence was conflicting. The presiding judge awarded the custody to the father, and the grandmother excepted.

1. On the hearing most of the evidence was delivered orally by the witnesses. Three affidavits were offered by the plaintiff, tending to support other evidence in his favor, by which it was sought to prove, among other things, that he expressed unwillingness to part with the custody of the child permanently and declined to do so. Objection was made to their admission, "on the ground that they were irrelevant, hearsay, stated opinions instead of facts, and for the further reason that respondent was denied the right and privilege of cross-examining the witnesses." The objection was overruled. Many of the recitals in the affidavits were relevant, were not hearsay, and were not mere opinions. Thus there were statements that the father sent money and clothes to the respondent for the support of the child; and that he had asked the respondent if she needed any more money for that purpose, and received a negative answer. The objection was to the affidavits as a whole. If any special parts of them were subject to objection, they were not pointed out.

2. The question then arises, were these affidavits properly ad-

mitted over objection on the ground that the respondent was denied the right of cross-examination? Properly exercised, this is an important right. Its function is not merely to confuse or harass adverse witnesses, but to develop the whole truth, which does not always fully appear from the testimony of a witness on his examination in chief. Facts may be omitted, without any wrongful intent, which give an entirely different appearance to the case. Or if feeling or interest colors the evidence of a witness, whether intentionally or not, this can often be made to appear. Generally speaking, testimony is not admissible, on a final trial of the issues in a case, where there has been no opportunity for cross-examination, save in certain special instances which the law writers treat as exceptions to the rule excluding hearsay evidence. On the hearing under a writ of habeas corpus, involving the custody of a child, the better practice is to require the testimony to be delivered from the stand, or by depositions or interrogatories duly taken, with the privilege of cross-examination preserved, where practicable. Affidavits are often unsatisfactory at best. The affiant swears that what he states is true, but he does not swear that it is the whole truth, nor has the adverse party an opportunity to inquire whether it is so. We do not commend the practice of determining so important a question as the awarding of the custody of a child, with all the possible consequences to its future life and happiness, upon mere ex parte affidavits, as a general practice. Such a decision is final, under the circumstances then presented.

But the introduction of affidavits in certain instances is permissible. It has long been the recognized practice to use affidavits on the hearing of applications for interlocutory injunctions or for the appointment of receivers pendente lite. It has been held permissible, on the hearing of applications for temporary alimony, to cause witnesses to be sworn, subject to cross-examination, or to admit affidavits. *Rogers* v. *Rogers,* 103 *Ga.* 763 (30 S. E. 659). Personally, when he was a judge of the superior court, the writer found the former method far more satisfactory, though less expeditious; and no doubt other trial judges have had the same experience. To see and listen to a witness for ten minutes, with the privilege on the part of the court to interpose a question when it is necessary for the full development of the truth, often gives the presiding judge a clearer insight into the real situation, in an

alimony case, where his discretion is invoked, where the feelings of the parties are frequently deeply stirred, and where the judgment may be enforced by imprisonment, than to listen to affidavits for an hour. In such a case, there is not infrequently an indisposition to tell the whole truth, and thus open the door of the closet where the family skeleton may lie concealed. Affidavits on the same side are sometimes as uniform in appearance as eggs in the shell; but if one of them be prodded with the point of a cross-question or two, the yolk is at once exposed.

Still, the rule is not arbitrary or inflexible in certain hearings. On the subject of writs of habeas corpus to test the legality of the detention of one deprived of his liberty, the Penal Code, §1222, provides as follows: "If the return denies any of the material facts stated in the petition, or alleges others upon which issue is taken, the judge hearing the return may, in a summary manner, hear testimony as to the issue, and to that end may compel the attendance of witnesses, the production of papers, or may adjourn the examination of the question, or exercise any other power of a court which the principles of justice may require." The writ is also used as a means of determining the custody of minor children. The presiding judge often has to use great discretion in judging of the status of parties and what is for the welfare of the child. He needs all the light he can obtain for the just and faithful discharge of his duty. It may be that a witness is beyond seas, or inaccessible, or for other reason can not be put upon the stand. The writ is a speedy writ. The proceeding is summary in its nature. It is a judicial proceeding, and to be conducted in an orderly manner as such. But it is not exactly a lawsuit in the ordinary sense of the term. Simmons v. Georgia Iron and Coal Co., 117 Ga. 309 (43 S. E. 780, 61 L. R. A. 739). To delay its hearing until a witness absent from the State or the country can return, or until interrogatories can be prepared, notice given, cross-questions propounded in writing, and commission forwarded to a distant State or country and there formally executed, might require so much time that the hearing under the writ would be unreasonably delayed. It may be necessary to admit an affidavit, or, in default of it, to exclude much needed light altogether. Or there may be other circumstances rendering the use of affidavits proper. On this subject the presid-

ing judge must be allowed some discretion. This is certainly true when the question is entirely of a civil nature, and not involving criminal law. In 15 Am. & Eng. Enc. Law (2d ed.), 208, referring to habeas-corpus cases, it is said: "The use of affidavits in evidence is now authorized by statute both in England and in the United States, though the practice existed in England before the enactment of the statute. Thus affidavits may be used to enlarge the time of the return, to fortify the return, or to controvert the truth of its recitals; but not to deny the existence of any facts found by the court. So, too, affidavits are admissible in proof of facts which, conceding the return to be true, will show the detention to be illegal." In so far as this statement is based on the express provisions of statutes, it does not apply in this State, where the only statute bearing on the subject is that quoted above. Nor does it mean that the guilt or innocence of a person indicted or arrested under regular process for a criminal offense can be tried and determined in this summary manner. In Hurd on Habeas Corpus (2d ed.), 304, it is said: "It was not provided by statute in England until the passage of the act, 56 Geo. III, 100, sec. 3, that the truth of the facts set forth in the return, in cases other than commitments for criminal or supposed criminal matter, might be examined into by affidavit; but it was nevertheless the practice to do so, long before that period. And the same practice prevailed in other summary proceedings; such as interlocutory applications in chancery; and various motions in actions at law, to set aside judgments, to obtain attachments, to enter satisfaction, &c.; and in criminal proceedings, for leave to file a criminal information; and after conviction of misdemeanor, for leave to show matter in aggravation by the prosecutor, or in mitigation by the defendant."

In Church on Habeas Corpus (2d ed.), §207 (p. 289), it is said: "This species of evidence is of very low order, and it is with reluctance that judges and courts will receive it in many cases. It is received with caution and closely scrutinized. Affidavits are highly objectionable if not taken before competent authority and properly authenticated; but when they are so taken, though without notice to the adverse party, they may be offered and received in evidence, but their reception is addressed to the sound discretion of the court, and which must be regulated by the

circumstances of each particular case. Affidavits should not be used where the attendance of witnesses can be obtained with reasonable diligence, and when this can be done the attendance of witnesses will be required in examinations in criminal proceedings." In State v. Lyon, 1 Coxe (N. J. L.), 409, on the original hearing had upon the return of the writ of habeas corpus, an affidavit, taken ex parte and not entitled in the cause, was offered in evidence, and objection was made to its admission. The court said: "This evidence has been objected to on the ground that it is ex parte and taken without any notice being previously given to the person against whom it is designed to operate. The party adducing it is bound to show that the testimony is legal, and taken in a mode conformable to law. The fact which constitutes the ground of objection has not been denied, and as we are not satisfied that there exist any reasons to take it out of the general rule, the evidence must be overruled." In Hurd on Habeas Corpus, 306, 307, it is said, that "In the D'Hautville case in the Court of General Sessions of the city and county of Philadelphia, in 1840, ex parte affidavits, taken before the writ of habeas corpus was sued out, were rejected by the court, which thought the 'admission of such evidence would be a dangerous precedent.' The court, however, admitted that it was within their discretion to receive the affidavits. They held that the party offering them could not insist upon their reception as a matter of right; and that under the circumstances of the case—the conduct of the relator in giving notice of the taking of other evidence subsequent to the date of the writ and lapse of time, affording ample opportunity to take the evidence contained in the affidavits objected to on like notice— they ought not to be received." In Verse v. Ford, 37 Ark. 27, it is said: "In deciding contests upon writs of habeas corpus for the custody of infant children, the principles adopted in the chancery court must govern. No rigid rules to govern the practice have or can be formulated." See also Church on Habeas Corpus (2d ed.), §§ 154, 212. As an illustration of an English case arising under a writ of habeas corpus to test the custody of a minor, in which affidavits were used, mention may be made of the celebrated case of King v. Delaval, 1 Wm. Bl. 410, 439.

Without entering into a discussion of the statute of 31 Car. II or that of 56 Geo. III, c. 100, touching the writ of habeas cor-

pus, or whether it is permissible to use affidavits in cases involving criminal matters in this State, it is sufficient to say that, where the writ is used as a means of determining the custody of an infant, the better practice is to hear evidence viva voce, or taken after notice and with opportunity for cross-examination where practicable; but that this is not an inflexible rule, and that the presiding judge is vested with discretion as to admitting affidavits, under the circumstances of the case. In the proceeding now before us, the judge, in the exercise of his discretion, admitted certain affidavits. The plaintiff in error carries the burden of showing that this ruling was error. The record discloses nothing as to the circumstances on which the court based his ruling, nor any facts which would show that there was an abuse of discretion in it. They were cumulative also of very positive testimony delivered on the stand by the applicant for the writ. Under the facts as disclosed by the record, we can not say that there was any such error in this ruling as to require a reversal.

3. On the merits of the case it may be said there is no unusual feature to differentiate it from others of like kind. The child's mother died. The father left his infant daughter with her maternal grandmother. Later he remarried, and desired the custody of his child, which was refused. Prima facie, in the absence of anything to the contrary, the father is entitled to the custody of his child. No question of unfitness or inability to care for the child was made. The grandmother contended that the father had relinquished to her his parental control by contract. He denied that he had done so. The evidence was conflicting, but was amply sufficient to sustain the finding of the presiding judge in favor of the father. No sufficient reason is shown why this judgment should be reversed.

*Judgment affirmed. All the Justices concur.*