## WILKINSON *v.* LEE.

1. A father is entitled, prima facie, to the control of his minor child.
(*a*) But parental power may be lost "by voluntary contract, releasing the right to a third person," or "by failure of the father to provide necessaries for his child."
(*b*) A contract releasing the right of parental power over a child must be clear, definite, and certain.
2. Where a father, a few days after the death of his wife, voluntarily told the great-grandfather of his child, three days old, that he might take and keep the child as long as he and his wife lived, or until the child was twenty-one years old, and the great-grandparent did take, keep, maintain, and protect it until it was abducted by the father, at three years of age, this was a voluntary contract on the part of the father releasing his right to the child to a third person, and it was sufficiently definite and certain to be enforced.
(*a*) In such a case the contract is not void as being unilateral.
(*b*) Nor is it void and unenforceable for want of consideration.
(*c*) The evidence is amply sufficient to support the finding in this case.
3. In a habeas-corpus proceeding by a great-grandfather to recover possession of a child alleged to have been given to him by its father, and also alleged to have been abducted from him by the father, it was not reversible error for the court, pendente lite, to award the temporary custody of the child to the grandparent from whom it had been so taken, upon his giving bond for its production in court, where it appears that the final judgment was right.
4. As strict technical pleadings are not required in habeas-corpus proceedings as in some others.
(*a*) Judges of the superior court are vested with large discretion in habeas-corpus cases, and their judgment in such cases on questions of law and fact will not be interfered with by this court, unless manifestly abused.
(*b*) The court below did not abuse its discretion in this case.
5. The other grounds of error assigned are without merit.

JULY 10, 1912.

Habeas corpus. Before Judge Roan. DeKalb superior court. November 18, 1911.

*Alonzo Field* and *Paul L. Lindsay,* for plaintiff in error.

*Hooper Alexander* and *J. D. Kilpatrick,* contra.

HILL, J. This is a habeas-corpus proceeding commenced by J. R. Lee, the great-grandfather of Theodore Lee Wilkinson, a minor child three years old, to recover possession of the minor from his father, R. A. Wilkinson. The plaintiff in error, Wilkinson, married the granddaughter of the defendant in error. By this union the child in controversy was born. The mother died seven hours later. After the funeral of the mother the question arose as to what should be done with the child. There is a conflict in the evidence, but the preponderance of it is to the effect that the father, the plaintiff in error, being consulted about the disposition of the child, said, in substance, to the great-grandfather, Lee, that he "couldn't just give the child away like a puppy," but that he might take the child and keep it as long as he and his wife lived, or until the child was twenty-one years old. The plaintiff in error insists that the child was left as a temporary loan, and that no definite contract was set forth. This old couple did take the child, cared for it, and paid all of its expenses, of whatever kind, including medical bills, etc. The wife of Lee was not related to the child, she being a second wife, but the evidence discloses that she was kind and attentive, and loved and cared for the child as a mother. Sometime after the death of his wife Wilkinson moved from Henry county, where he had lived and worked around in various places, and in the neighborhood where the Lees lived, and sometimes for the Lees. He was frequently a visitor at the Lee home, and seemed fond of the child. He was permitted to see the child as often as he wished, and on one occasion was allowed to take the child away from the Lee home to a picnic. Leave to take the child to his home for a visit shortly thereafter was refused. At one time Wilkinson gave Lee two dollars for the child, which he loaned out for the latter, but would never accept any compensation for the rearing or expenses of the child. About a year before the bringing of the present action, Wilkinson, the father, married a second time, and his wife was received at the Lee home on the same terms as her husband had been. No claim to the child as a matter of right seems to have been asserted by Wilkinson; and Mrs. Lee testified that on one occasion she told Wilkinson she had heard of a threat on his part to take the child away, which he denied. He testified that he made no reply. No question is raised in the record as to the ex-

cellent character of either party to the case, or as to the ability of either to properly raise, maintain, and educate the child.

On Sunday, the 28th day of August, 1910, the day previous to the suing out of the writ of habeas corpus, Wilkinson with his wife came on a visit to the Lee home, and was received as usual. His two brothers came in a buggy, but concealed themselves in the woods near the house, where they could not be seen by the Lees. The Lees and the Wilkinsons sat on the porch and ate watermelons. A little later Wilkinson walked out in the yard with the boy, then about three years old, and placed him in a buggy from which the horse had never been unhitched. Suddenly and without any apparent warning he drove off with the boy at a rapid gait. His wife, seizing her hat, rushed out into the road and was taken in the buggy of the brothers and driven rapidly away. The two sons of Lee, as soon as a horse could be hitched to a buggy, gave pursuit and overtook Wilkinson about two miles from the Lee home. Being called on by them to stop, he informed the Lees that he had a gun. The pursuit was there abandoned, and the present action begun the next day before the Hon. J. R. George, ordinary of DeKalb county, to recover possession of the child so taken. The trial was postponed several times at the instance of Wilkinson, in order to allow him to take the testimony of his mother, who was unable to attend court. A continuance later, in order to take the testimony of other witnesses as to Wilkinson's good character, was denied, the counsel for Lee stating that the character of Wilkinson was admitted to be good. The court, after hearing all the testimony in the case and argument of counsel, awarded the custody of the child to the plaintiff, Lee. To this judgment Wilkinson applied for a writ of certiorari to the superior court. After the hearing upon the certiorari the superior court declined to interfere with the judgment of the ordinary, and the present writ of error was sued out, excepting to the judgment of the superior court.

1. A father is entitled, prima facie, to the control of his minor child. Civil Code, § 3021. But parental power may be lost, among other ways, "by voluntary contract, releasing the right to a third person," or by "failure of the father to provide necessaries for his child." Civil Code, § 3021; *Janes* v. *Cleghorn*, 54 *Ga.* 9; *Bently* v. *Terry*, 59 *Ga.* 555 (27 Am. R. 399); *Miller* v. *Wallace*, 76 *Ga.* 479

(2 Am. St. R. 48); *Townsend* v. *Warren,* 99 *Ga.* 105 (24 S. E. 960); *Lamar* v. *Harris,* 117 *Ga.* 993 (44 S. E. 866); *Eaves* v. *Fears,* 131 *Ga.* 820 (64 S. E. 269). The contract releasing the right to the parental power and custody of a child must be clear, definite, and certain. *Miller* v. *Wallace,* supra. The case last cited, relied on by the plaintiff in error makes a very different situation from the present. In that case Miller was as much in possession of the child as the grandparents. And the court says of Miller, page 488, that "He never at any time assented to claims set up by its grandmother, by act or word, to its exclusive custody and control, but always, when such issues were raised, denied her authority by courteous and deferential conduct and language." Here the reverse is true. The step-great-grandmother asserted the right in her husband to the child, and the parent said nothing, according to her testimony. Wilkinson, it is true, denies this, but the great weight of evidence was with the Lees, that neither "by act or word" did Wilkinson ever assert any right to the power over or custody of the child, after making the contract, until the Sunday on which he abducted the child. See also *Janes* v. *Cleghorn,* 54 *Ga.* 13.

2. The main question in this case is whether there was a contract between the father of the child and the great-grandfather, and whether the contract was sufficiently definite that by its terms the parental power over the child was lost by the father and acquired by the great-grandparent. On the question of the existence of a contract the evidence is conflicting, but the great preponderance of it is in favor of the defendant in error. His testimony, corroborated by a number of witnesses, was to the effect that the father had told him, when the child was but a few days old, that he might take and keep it as long as he and his wife lived, or until the child was twenty-one years old. The evidence shows that the great-grandparent did take and keep the child from that time until it was three years old, before the father asserted any positive claim of right to it. We think the evidence and all the circumstances of the case were sufficient to authorize the ordinary to award the custody of the child to its great-grandparents. Nor do we think the superior court erred in refusing to interfere with the judgment of the court of ordinary. *Townsend* v. *Warren,* and *Eaves* v. *Fears,* supra. See *Moore* v.

*Dozier*, 128 *Ga.* 93 (57 S. E. 110). The contract was sufficiently definite and certain to be enforced. According to the contention of the defendant in error, the great-grandparent was to have the child as long as he and his wife lived, or until the child was twenty-one years old. If this contract be proved (and the preponderance of the evidence is to that effect), then the father has lost his power over and control of the child as long as the great-grandparent and his wife live, or until the child becomes twenty-one years old. We do not see how the contract could be much more definite or specific.

Nor do we think there is any merit in the contention of the plaintiff in error that the contract is unilateral and without consideration. The parent gave up the possession of his child, with his right and power of control, and, on the other hand, the great-grandparent received the child and assumed all the responsibility of its maintenance, education, and protection, and thus stands in loco parentis, and such a contract entered into by a parent and great-grandparent can not be said to be unilateral and without consideration. The evidence in the case shows that there was a sufficient consideration to support the contract. See *Eaves* v. *Fears,* supra.

3. One ground of exception taken is that the ordinary, pending the hearing of the main issue of the case, after several motions had been made to continue the case and the same were overruled, awarded the temporary custody of the minor child to the great-grandparent upon his giving bond for the production of the body of the child in court. It is insisted that this action on the part of the court was a prejudgment of the case, and disqualified the court from passing a final judgment awarding the child. We do not so consider. At the conclusion of the entire case, the ordinary awarded the custody of the child to its great-grandparent, and the judgment of the superior court was in effect the same; and on a careful review of the whole case, we can not say that the temporary awarding of the custody of the child to the great-grandparent, pendente lite, is cause for a reversal, where, upon a review of the entire record, the final judgment of the court of ordinary and of the superior court is found to be right.

4. Error is assigned on the refusal of the court to sustain a demurrer to a traverse of the answer to the writ of certiorari, and

a motion to strike exceptions to the same. It is sufficient to say that technical pleadings in a case like this are not required. The necessity for as strict technical pleadings does not apply to habeas-corpus proceedings as in some others. As Mr. Justice Lumpkin well said in the case of *Robertson* v. *Heath*, 132 *Ga.* 313 (64 S. E. 73) : "Still, the rule is not arbitrary or inflexible in certain hearings. On the subject of writs of habeas corpus to test the legality of the detention of one deprived of his liberty, the Penal Code, § 1222, provides as follows: 'If the return denies any of the material facts stated in the petition, or alleges others upon which issue is taken, the judge hearing the return may, in a summary manner, hear testimony as to the issue, and to that end may compel the attendance of witnesses, the production of papers, or may adjourn the examination of the question, or exercise any other power of a court which the principles of justice may require.' The writ is also used as a means of determining the custody of minor children. The presiding judge often has to use great discretion in judging of the status of parties and what is for the welfare of the child. He needs all the light he can obtain for the just and faithful discharge of his duty. It may be that a witness is beyond seas, or inaccessible, or for other reason can not be put upon the stand. The writ is a speedy writ. The proceeding is summary in its nature. It is a judicial proceeding, and to be conducted in an orderly manner as such. But it is not exactly a lawsuit in the ordinary sense of the term. *Simmons* v. *Georgia Iron and Coal Co.*, 117 *Ga.* 309 (43 S. E. 780, 61 L. R. A. 739). To delay its hearing until a witness absent from the State or the country can return, or until interrogatories can be prepared, notice given, cross-questions propounded in writing, and commission forwarded to a distant State or country and there formally executed, might require so much time that the hearing under the writ would be unreasonably delayed. It may be necessary to admit an affidavit, or, in default of it, to exclude much needed light altogether. Or there may be other circumstances rendering the use of affidavits proper." In habeas-corpus cases the judge of the superior court is vested with large discretion, and his judgment in such cases will not be interfered with by this court, unless it is manifestly abused. *Bently* v. *Terry*, 59 *Ga.* 555 (4).

5. The other grounds of error assigned are without merit.

*Judgment affirmed. All the Justices concur.*