### EAVES *v.* FEARS *et al.*

1. Civil Code, §2502, providing that parental power over a child is lost "by voluntary contract releasing the right to a third person," does not relate to a contract of a parent apprenticing his child to a third person, and such voluntary contract of a father may be valid and binding on the father although he does not therein apprentice his child.
2. Where a father makes an absolute and unconditional gift of his child to its grandparents, who accept it and take it into their home as one of the family, and there is no express agreement, or facts and circumstances connected with the transaction from which an agreement could be implied, that any one other than such grandparents is to receive the proceeds of the labor of such child, or is to maintain or care for it; *held:*
(*a*) The grandparents stand in loco parentis to such child, and are entitled to the proceeds of its labor, and are bound for its care, maintenance and support.
(*b*) Such contract is not without consideration.
(*c*) Such contract is sufficiently definite and clear in its terms to be valid and binding on the father.
3. In this case the court did not err in awarding the custody of the child to the defendants.

Argued April 20,—Decided December 19, 1908.—Rehearing denied January 21, 1909.

Habeas corpus. Before Judge Brand. Clarke superior court. February 14, 1908.

*R. R. Arnold, J. L. Mayson, Cobb & Erwin,* and *Slaton & Phillips,* for plaintiff.

*H. S. West* and *Tye, Peeples, Bryan & Jordan,* for defendants

HOLDEN, J. The plaintiff sued out a writ of habeas corpus to recover the possession of his child from its maternal grandparents; and to the order of the court awarding the custody of the child

to the defendants the plaintiff excepted. On November 6, 1902, the plaintiff married the daughter of the defendants. The child was born on October 20, 1903, and the mother died seven days thereafter. The defendants have had possession of the child since the death of its mother. There was evidence offered by the defendants that the father gave them the child. The father denied that he had ever made any contract whereby he had lost his parental control over the child.

1. The Civil Code, § 2502, provides: "Until majority, the child remains under the control of the father, who is entitled to his services and the proceeds of his labor. This parental power is lost—1. By voluntary contract releasing the right to a third person." Counsel for the plaintiff contends that the meaning of the provision that the parental power is lost by voluntary contract releasing the right to a third person relates only to apprenticing the child by the father. This provision was in the Code of 1863, and in 1865 the legislature passed an act providing that the father might apprentice his child, which is now embodied in section 2604 of the Code of 1895. This section provides as follows: "All minors may, by whichever parent has the legal control of them, be bound out as apprentices to any respectable person until they attain the age of twenty-one years, or for a shorter period." Both of the sections above referred to were placed in the Codes of 1868, 1873, and 1882, as well as the Code of 1895. We do not think that the words "voluntary contract" in section 2502 mean a contract of apprenticeship. We think the legislature, in passing the act of 1865 giving the father the right to apprentice his child, intended to legislate upon a separate and distinct matter from that embraced in section 2502. By the passage of this act after the Code of 1863 embracing the provisions of section 2502 of the present Code, and by retaining these two distinct provisions in all the codes since its passage, it was evidently the intention that the loss of parental power as provided in section 2502 meant something other than apprenticing. This section has been construed in several decisions of this court, and it has nowhere been held that a contract releasing the parental power to a third person referred to in that section merely related to the apprenticing of a child by its parents. In this connection, see *Looney* v. *Martin,* 123 *Ga.* 209, *Carter* v. *Brett,* 116 *Ga.* 114, *Lamar* v. *Harris,* 117 *Ga.* 993,

and other authorities cited in these cases. We agree with learned counsel for plaintiff that the law never intended that a child should be the subject of bargain and sale, as is property. It was never contemplated that all of the laws governing a contract of bargain and sale of property should apply to a contract whereby a father released control of his child. The law presumes all men honest in their dealings, and likewise presumes that a parent, in disposing of his child, would be actuated by motives that are proper, and that his chief concern would be the welfare of his child. It would be an inhuman, and, indeed, a monstrous act, for a father to dispose of his child as he would a piece of property, *solely* to relieve himself of his child's care and support, or for any pecuniary considerations. The law, in providing that he could lose his parental power by a voluntary contract, never contemplated that the father would dispose of his child solely for the purposes above stated, nor would it look with favor on any such contract. The State is vitally interested in the existence and the proper moral, intellectual, and physical training of its children who are to become its men and women; and in looking to the welfare and well-being of the child itself, when it provided that the father could release his parental power over his child to another, it presumed that the parent would, in making such contract, always have in mind the interests of his child. We do not think that the legislature, in the two sections above quoted, meant to provide that the parental power could be lost only by a contract of apprenticeship. Under section 2604, the parent can apprentice his child; and under section 2502, he can lose his parental power by contract which does not involve all the incidents of the contract of apprenticeship; though, as above stated, it did not contemplate a contract with all the incidents of a bargain and sale of property. Moreover, the law provides that in the trial of habeas-corpus cases the court shall have the power to give the custody of the child to a third person. The law would not permit a person to whom a parent has released his parental control over a child to have its custody, if such person was unfit. One of the main concerns of the court in awarding the custody of the child is the welfare of the child itself, and no parent could make such an absolute disposition of his child that the court could in no event disregard the contract of the parent.

2. Counsel for the plaintiff contends that if any contract was made by the plaintiff, releasing his parental control over his child, it was without consideration, and its terms were not definite and certain. The evidence of Mrs. Fears was to the effect that on the day of the death of the mother of the child, the plaintiff gave the child to her and she agreed to take it and try to raise it, and did then take it. Nothing was said as to the time during which she was to have the child. She took the child, and a few weeks thereafter the father told her that he had given her the child for her life. There were several other witnesses who testified that thereafter the father made the statement to them that he had given the child to Mrs. Fears. There is testimony by Mr. Fears, one of the defendants, relating to a conversation had with the plaintiff several weeks after the death of the mother, wherein the plaintiff used the expression, "I have given you my baby, and I am surprised to think you all think I am such a boy, to think I would come in and take the baby away from you." In answer to an inquiry by the court as to what length of time the child was given him by the plaintiff, Mr. Fears answered, "Unlimited, unreservedly," and he further testified concerning this conversation: "I said my wife and I would rather have a contract. . . I said the baby is a tie that you have given us, and binds you to our hearts as any child we have got." This witness further testified that during the conversation the plaintiff said: "Unreservedly, it is yours; don't you and your wife worry no more about this child." Mr. Fears further testified: "After Eaves told me the baby was ours, I and my wife talked the matter over. My daughter was keeping a boarding-house. We decided it was no place to raise a child in a boarding-house; I then went and had a home built beyond that, for the purpose of raising this little child where it could be properly treated and properly trained without having boarders around it." Both defendants filed an answer wherein they claimed that the father had made a contract whereby he released his control and rights "to these defendants." It does not appear from any of the testimony in the case that anything was ever agreed upon between the parties as to who should have the proceeds of the labor of the child, or who should maintain and support it; but an absolute, definite, and unconditional gift of a child to another, who takes it with the statement that they would

try to raise it, would put such other person in loco parentis to the child, with all the duties and rights of a parent. We do not mean to say that if the facts and circumstances connected with the contract were such as to leave it in serious doubt as to who was to receive the proceeds of the labor of the child, or provide for its maintenance and support, the contract would be sufficiently definite and clear in its terms. But where there are no facts or circumstances from which it might be inferred that the parent, or any one other than the person accepting the child as a gift, is to receive such proceeds, or provide such maintenance, the person receiving from the parent the child as a gift would have all of the rights, and would have imposed on him all the duties of a parent. In the case of Williams v. Hutchinson, 3 N. Y. 312 (53 Am. Dec. 301), it was ruled, "Persons standing in loco parentis are entitled to the rights and subject to the liabilities of an actual parent, though not legally compelled to assume that relation." In 21 Am. & Eng. Enc. Law, 1050, the doctrine is laid down that "persons standing in loco parentis to minor children are also bound to support them." In the case of Thorp v. Bateman, 37 Mich. 68 (26 Am. Rep. 497, 498), the court says: "The case made by Bateman was substantially this: that his wife was the grandmother of Thorp's daughter, and the latter was taken into Bateman's family when she was a very young child, where she remained and was supported by Bateman for several years under an agreement that she should live there until she became of legal age; that, Mrs. Bateman having died, Thorp came and took his daughter away against the will of Bateman, and without making any compensation, thereby depriving the latter of the benefit he might have derived from the labor of the daughter afterward. The action was grounded on an implied assumpsit, and the plaintiff in the court below was allowed to recover. It can hardly be pretended that in the absence of an express arrangement Thorp would have been liable to pay for his daughter's board and support. The presumption always is, when a child is thus taken into a family, that neither support nor services are expected to be compensated, except as the one compensates the other; in other words, that the child comes in as a member of the family, and for the time being occupies substantially the same position as would a member of the family by nature." In 29 Cyc. 1671, it is stated:

"A person standing in loco parentis is bound for the maintenance, care, and education of the child, and liable for necessaries furnished to it, and he can not be allowed to assert a claim for the support of the child to whom he stands in such relation, in the absence of an express or implied understanding that he is to be compensated therefor." In this case there was no express or implied understanding that the defendants were to be compensated for the care and support of the child of the plaintiff, or that they were not entitled to the proceeds of its labor. The law imposes on the father the duty of maintaining and supporting his child; and while he may release his parental control and contract for this support and maintenance to be furnished by others, we do not mean to hold that he could relieve himself of this legal obligation were the support not properly furnished by the person with whom he contracted. In 21 Am. & Eng. Enc. Law, 1050, this text is employed: "A husband is not bound in law to provide for a child of his wife by a former husband; but if he receives such child into his home and holds him out to the world as a member of his family, he stands to him in loco parentis, and incurs the same liability for his support as in the case of his own children. In such case there is no implied contract on the part of the child to pay for its support, and the stepfather can not, as against the child, charge or recover compensation therefor." In the case of *Bently* v. *Terry,* 59 *Ga.* 555, it was held that a contract, though made with the wife by the child's father, will be enforced if acquiesced in by the husband. On page 557, the court says: "Nor do we think that she could not make such a contract under the circumstances of this case. Her husband acquiesces in it. He joins her in defense of this suit. He received the child at his house, and supports his wife throughout in the transaction. The contract is binding both upon the wife and himself. Besides, this is a sort of matter that the wife will always manage, and the husband must object in time if he does not wish to be bound by her acts. In the case of *Janes* v. *Cleghorn,* 54 *Ga.* 10, the contract there enforced was with a married woman. But it is clear, in this case, that the husband has ratified all that his wife did." We think the court was authorized, under all the evidence in the present case, to find that the plaintiff had made a contract, sufficiently definite and clear in its terms, releasing his parental control over

his child to the defendants, and that there was a sufficient consideration to support the same.

3. The evidence shows that the plaintiff and the defendants are all able to maintain and rear the child, and there was no question made in the evidence as to the fitness of the father, or the grandparents, to raise her. She has been with the grandparents since she was a few days old and has known no other home. They were boarding when they received her, but, thinking it would be better for the child to raise her in a home of their own rather than in a boarding-house, they ceased boarding and built a home to which they removed. The evidence shows them to be greatly attached to the child, that they treat her with loving kindness, and evince for her the deep affection which grandparents usually feel for their grandchildren. There were no errors committed on the trial, of which complaint is made, which require the grant of a new trial.          *Judgment affirmed. All the Justices concur.*