HOWARD *et al.*, executors, *v.* RANDOLPH.

1. A person assuming the parental character and discharging parental duties to a minor child, received into his family as a child and not as a servant, stands in loco parentis to such child.

2. Where a person assumes the relation of a parent to a child not of kin, which he takes from an orphanage at the tender age of three years, and faithfully discharges the duties of that relation by receiving such child into his family and educating and supporting her as if she had been his own child, and where there is no express agreement to pay wages to the child, she can not maintain an action against the executors of the person who stood in loco parentis, for services rendered while a minor, although the value of the services may exceed the expenses of such education and support.

3. One who has been received in infancy as a child into a family not of kin to her, and remains in the household after her majority and then seeks to recover for services rendered to such family after majority, has the burden of proof to show either an express contract, or circumstances from which a contract to compensate for such services may be implied.

4. In elucidating the question whether such services were rendered gratuitously or under an implied promise of compensation, evidence relating to the character and extent of the services, the declarations and conduct of the recipient, the value of the services, and corresponding benefits to the recipient, is admissible.

JUNE 28, 1910.

Complaint. Before Judge Brand. Jackson superior court. January 18, 1909.

*J. A. B. Mahaffey* and *John J. Strickland,* for plaintiffs in error.

*J. S. Ayers* and *H. H. Dean,* contra.

EVANS, P. J. This is a suit to recover upon a quantum meruit $3,949 principal, besides interest, for services alleged to have been rendered to J. E. Randolph, the defendants' testator. The greater part of the recovery sought is claimed for services alleged to have been rendered during the plaintiff's minority. The jury returned a verdict in her favor for $3,240.10 principal, and $929.50 interest. The plaintiff voluntarily wrote off from the amount of interest $343.60. The court refused the defendants a new trial.

We gather from the record that J. E. Randolph, who was without children, and whose household consisted of himself and wife, about the year 1885 took the plaintiff, then a child of about three years, from an orphanage, and received her into his household as a member of his family, where she remained until his death in 1905. Though of no kin to her, he gave to her his surname, maintained and educated her, and in all respects treated her as a daugh-

ter and member of his household.  He was a man in easy circumstances, always provided his household with two servants, and the plaintiff was not called upon to discharge any domestic services, except such as are usually rendered by a daughter under like circumstances.  Her education was not confined to the elementary branches of a common-school education, but she was taught music and art, and graduated from an institution of learning about the year 1899.  After her graduation in 1899 she taught school five months, and again taught school in 1901 about five months.  She was teaching school in 1905, when, about the first of February, she was summoned to the bedside of Mrs. Randolph, who died about a month later, and about a month thereafter Mr. Randolph died.   Mr. Randolph owned several small tenant houses near a factory, some storehouses, and some land.   He also conducted an undertaking business in Jefferson, a town of fifteen or eighteen hundred population.  When the plaintiff was about 12 or 14 years of age she began to assist Mr. Randolph in dressing coffins as he would sell them, and she assisted in collecting the rents from the small houses, and in keeping his accounts with respect to these matters.   To what extent she assisted in the collection of rents, and the character of the accounts which she and Mr. Randolph kept appertaining to the rent and undertaking business, does not appear with much precision in the record.   Mr. Randolph was accustomed to use intoxicants, and sometimes got drunk, and the plaintiff always administered unto his wants on these occasions.   Whenever Mrs. Randolph was sick she would nurse her.   Mr. Randolph left an estate of about $60,000, and his will bequeathed to the plaintiff one thousand dollars in cash and a third interest in the undertaking business, from which she realized $450.   The whole evidence tended to show that the relations between the plaintiff and Mr. Randolph and his wife were cordial, and such as might be expected between parent and child.   No hint of unkind, disrespectful, or inconsiderate treatment from one to the other is suggested.

1, 2.   Until majority the child remains under the control of the father, who is entitled to its services and the proceeds of its labor.  Civil Code, § 2502.   Likewise one who stands in loco parentis to such child is entitled to the proceeds of its labor, and is bound for its care, maintenance, and support.   *Eaves* v. *Fears,* 131 *Ga.* 820 (64 S. E. 269).   A person who means to put himself in the situa-

tion of the lawful father of the child stands, with respect to the father's office and duty of making provision for the child, in loco parentis to the child. Brinkerhoff v. Merselis, 4 Zab. 683; Powys v. Mansfield, 19 Vesey Jr. 154. Sir William Grant said that one sustained this relation "by assuming the parental character and discharging parental duties." Weatherby v. Dixon, 19 Vesey Jr. 412. Where a person voluntarily assumes the relation of a parent to a child, whom he is under no obligation to support, and faithfully discharges the duties of that relation by receiving such child into his family and educating and supporting him on the same footing as if the child were his own, in the absence of an express agreement the child can not maintain an action against such person for services rendered while a minor, although the value of such services may exceed the expenses of such education and support. Under such circumstances a promise to pay wages will not be implied. Williams v. Hutchinson, 3 N. Y. 312 (53 Am. D. 301); Tyler v. Burrington, 29 Wis. 376. As was said in Schrimpf v. Settegast, 36 Tex. 296, "the weight of authority has established a doctrine that would hold a person who had, through motives of kindness or charity, received an orphan child into his family, whether it be a stepchild or an entire stranger, and treated it as a member of his family, as standing in loco parentis, so long as such child should see fit to remain in such family, or so long as it should be permitted thus to remain; and while that relation should exist, the party who stood in loco parentis would be bound for the maintenance, care, and education of such child, and would be entitled to his reasonable services, without being liable to pay for the same, only in the way of support, unless there had been an express promise to that effect." The record is silent as to whether the plaintiff at the time she was received into the family of the defendants' testator had father or mother or any one else to whom she could look for support and maintenance. As she was taken from an orphanage at such a tender age, we may indulge the inference that she was an orphan. Her introduction into the family of Mr. Randolph was as a member of his household. Indeed the plaintiff only begins to claim remuneration for services rendered after she had been in the household of her benefactor for some eight or nine years. At the time she was taken from the orphanage she was altogether too young to raise any inference that she was to be

requited for services. There is no conflict in the testimony that Mr. Randolph faithfully discharged his assumed duty of a foster parent during the minority of the plaintiff; and consequently his estate is not liable for services rendered during her minority.

There are several reported cases in this State (*Hudson* v. *Hudson,* 90 *Ga.* 581 (16 S. E. 349) ; *Phinazee* v. *Bunn,* 123 *Ga.* 230 (51 S. E. 300)), where recoveries were sustained in suits by children against parents upon implied contract; but in these cases compensation was claimed for services rendered after the child's majority.

3. The plaintiff embraced in her suit items for services rendered subsequently to her majority. With respect to her right to compensation for services rendered since her majority, it may be stated as a general rule that when services are rendered and voluntarily accepted, the law will imply a promise upon the part of the recipient to pay for them. There are exceptions to, and limitations upon, this general rule; one of which is, that where services are rendered by members of a family, living in one household, no such implication will arise from the mere rendition and acceptance of the service. This exception is not confined to cases where the parties sustain the relation of parent and child, but is extended also to strangers who have been received into the family as members of the household. Williams *v.* Hutchinson, Tyler *v.* Burrington, supra; Hogg *v.* Laster, 56 Ark. 382 (19 S. W. 975) ; Scully *v.* Scully, 28 Ia. 548. The reason for the exception is thus stated by Chancellor McGill: "The household family relationship is presumed to abound in reciprocal acts of kindness and good will, which tend to the mutual comfort and convenience of the members of the family, and are gratuitously performed; and where that relation appears, the ordinary implication of a promise to pay for services does not arise, because the presumption which supports such implication is nullified by the presumption that between members of a household services are gratuitously rendered. The proof of the services and as well of the family relation leaves the case in equipoise, from which the plaintiff must remove it, or fail." Disbrow *v.* Durand, 54 N. J. L. 343 (24 Atl. 545, 33 Am. St. R. 678). Therefore, where one who has been received in infancy into a family not of kin to her seeks to recover for services rendered to such family after her majority, the burden is upon her to show either an express contract, or circumstances from which a contract of remuneration for such services

may be implied. What circumstances might be sufficient to imply a promise to pay for services rendered would depend upon the special facts of the case, taking into account the nature of the services, the relation of the parties, declarations made at the time, indicating an intent of the recipient to compensate for the services rendered, and the like. As the case is to be tried again, we will forbear a discussion of the evidence submitted as a basis for such inference, further than to say that there was sufficient evidence to submit to the jury the plaintiff's right to recover for services rendered after she attained her majority.

4. Error is assigned upon the action of the court, allowing certain evidence. The character of the evidence was such as to bring it within the rule announced in the last headnote, and was admissible.          *Judgment reversed. All the Justices concur.*