### PHILLIPS, administrator, *v.* OWENS.

The verdict in this case was unauthorized by the evidence; it appearing that the suit for the value of petitioner's services was based upon a claim for compensation for services rendered to one who stood in loco parentis to the plaintiff, and that the evidence showed no facts raising the implication of a promise or agreement to pay for the services.

DECEMBER 14, 1910.

Complaint. Before Judge Brand. Franklin superior court. December 22, 1909.

*W. R. Little* and *J. B. Jones,* for plaintiff in error.

*B. T. Moseley, T. G. Dorough,* and *A. G. & Julian McCurry,* contra.

BECK, J. Mrs. Victoria Owens brought suit against E. P. Phillips, administrator of the estate of Wilborn Phillips, seeking to recover on a quantum meruit for services rendered to the defendant's intestate, alleging that when she was about eight months old she was carried to the home of Wilborn Phillips, and remained there until his death, which took place shortly after she attained her majority; that up to the time when she reached the age of

ten years her services "were well worth her board and clothes, and after that time were worth far more than her board and clothes, and that as she grew older her valuable services greatly increased up to the death of Wilborn Phillips;" that the money value of her services in the aggregate was $1,800 or other large sum; and that the defendant's intestate had said, in the presence of witnesses, that it was his intention to give a certain tract of land to petitioner, which was of about the value of $1,800, but he died without carrying into effect his expressed intention of making deeds to the tract of land, conveying same to petitioner. Evidence was introduced tending to show the character of the services rendered by petitioner and the work done by her for Wilborn Phillips. It appears from the evidence introduced by the plaintiff, that she did work of various kinds; that she picked cotton, hoed corn, pulled fodder, strewed guano, washed clothes, starched, ironed, milked, and cooked; she frequently worked as a laborer in the field; and that she fed cattle on the farm. The jury trying the case returned a verdict in plaintiff's favor for $975. The defendant made a motion for a new trial; and the court below, after hearing the same, ordered that if plaintiff would write off $245 from the amount of the verdict a new trial should be disallowed. The plaintiff complied with this condition, writing off the amount specified. The defendant excepted to the refusal to grant a new trial generally and unconditionally.

After an examination of the evidence in this record, we are of the opinion that the court below should have set aside the verdict in favor of the plaintiff, on the ground that the same was unauthorized by the evidence in the case. It appears that the plaintiff was carried to the home of Wilborn Phillips when she was an infant less than one year of age. While the evidence is somewhat confused as to the terms upon which she was left with Wilborn Phillips and his wife, it is clearly established that the father of the infant knew that she had been carried to the house, and ratified the act of the person leaving her at the Phillips home, and that from that date until his death Phillips stood in loco parentis to the child which had been left in his care. Phillips, the decedent, was a farmer of moderate means. He had several children, and all of them worked on the farm and did work of the same character as that performed by the plaintiff, although there was

some evidence tending to show that the plaintiff perhaps did more work than certain other members of the family. There is no evidence in the case to show that there was any contract, express or implied, whereby the defendant's intestate became obligated to pay the plaintiff for any services rendered. There is not a word in the record tending to show that Wilborn Phillips had at any time agreed to pay the plaintiff for her services, or that he had said in her presence, even in the most general terms, that she should· or would be compensated for her work. Nor is there anything to show that the plaintiff ever stated to Wilborn Phillips that she expected to be paid for the work that she was doing. The fact that Wilborn Phillips said on several occasions, in the presence of other persons than the plaintiff, that he intended to give a certain tract of land to the plaintiff, is not sufficient evidence of any contract, express or implied, to pay the plaintiff, to whom he stood in loco parentis, for the services rendered by her. If, as the plaintiff contends, the defendant's intestate ever expressed an intention to "make out papers" conveying to her the tract of land referred to, such expressed intention does not indicate his recognition of a claim upon the part of the plaintiff for pay for her services, but an intention to make a gift to the plaintiff, such as the evidence shows he made to one or more of his children. The expression used by him suggests nothing more than an intention on his part to give, and is not in the least suggestive of a recognition of any liability or obligation, the discharge of which a court could undertake to enforce. The general rule in such cases is that "A person standing in loco parentis is entitled to the services of the child; and the child can not maintain a claim against such person for services rendered, in the absence of an express or implied agreement to pay therefor." 29 Cyc. 1672. In the code the rule is thus stated: "Ordinarily, when one renders services or transfers property valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof; but this presumption does not usually arise in cases between very near relatives." And we fail to discover any facts whatever in this case which would render it an exception to the rule that "this presumption [of an implied promise to pay] does not usually arise in cases between very near relatives." The case of *Murrell* v. *Studstill*, 104 *Ga.* 604 (30 S. E. 750), and the case of *Phinazee* v. *Bunn*, 123 *Ga.* 230 (51 S. E.

300), were relied upon by counsel for defendant in error, as authority to support the rulings of the court in the instant case. But these two cases are easily distinguishable from the present case. From the record in the case of *Murrell* v. *Studstill* it is to be seen that the plaintiff, after she was an adult, left the home of her mother and stepfather and went to the house of her grandfather and rendered services similar to those which the plaintiff in the present case rendered, and for the value of which she afterwards brought suit against the administrator of the estate of her grandfather. And in the case of *Phinazee* v. *Bunn* the plaintiff had been an adult for a number of years when she rendered the services upon which she based her claim for compensation. And in both of the cases cited above it appeared from the evidence that the relative to whom the plaintiff had rendered the services had spoken to various witnesses of compensating plaintiff for her services. In *Murrell's* case there was evidence to show that the intestate had said, "that he intended to pay her [the plaintiff] for what she had done for him . . that he was going to pay her for her trouble; that she had been good to wait on him during his sickness, and attend to everything about the place; and that he intended to give her a good living out of what he had for her services during the time that she stayed with him. It appeared further [quoting from the decision in that case] that the plaintiff went to the home of her grandfather at his instance, one of the witnesses testifying that the plaintiff was 'employed' to stay with her grandfather." And in the case of *Phinazee* v. *Bunn* it appears, in addition to what we have noted above, "that the father stated several times that he had given the plaintiff 'the home place, or the money it would bring,' for waiting on him; that he had stated this in the presence of the plaintiff; that he had frequently said that the plaintiff must have pay, as she had earned it." From these excerpts taken from the reports cited, it is manifest there were material facts favorable to the plaintiff's case to support the contention that there was an implied agreement to pay, which do not appear in the case at bar. We do not think, however, that the doctrine laid down in the two cases from which we have quoted the above extracts should be extended to embrace a case like the one we have under consideration. For a fuller discussion of the question involved see *Howard* v. *Randolph*, 134 *Ga.* 691 (68 S. E. 586).

The evidence in the case showing beyond controversy that the plaintiff's intestate stood in loco parentis to the plaintiff, we have not thought it necessary to set it out or to discuss it more fully than is done above.

*Judgment reversed. All the Justices concur.*