## 3800.  CITY OF ALBANY *v.* LINDSEY.

1. One who, having accepted the gift of a child from its mother (the father being dead), thereafter duly performs the offices of a parent to the child, stands in loco parentis.

2. The relationship created by acceptance from a mother of the gift of her fatherless infant, and by due performance of parental duties toward the child, raises a corresponding and correlative duty on the part of the child to render, in behalf of the person thus standing in loco parentis, such service of value as the child may be able to perform, until it reaches its majority. And one who thus sustains the parental relation has a right of action, against one who tortiously deprives him of the service of the child, for any loss of the service of the child, prior to its majority, which is due to the act of the tort-feasor.

3. Though one standing in loco parentis by virtue of the gift of a child, followed by acceptance of the gift and performance of parental duties, is not entitled, under the provisions of section 4424 of the Civil Code (1910), to recover the value of the life of the child, still in an action based upon the tortious homicide of the child he may recover for the loss of its services, upon proper proof that the child was able to render services, and of their value, as if the relation were that of master and servant.

DECIDED SEPTEMBER 30, 1912.

Action for damages; from city court of Albany—Judge Crosland. September 18, 1911.

*James T. Mann,* for plaintiff in error. *Pope & Bennet,* contra.

RUSSELL, J. The ruling upon the demurrer, to which exception is taken, raises only one question, and, so far as we have been able to find, the precise point has never been decided in this State. It may be said that two questions are developed by the record: (1) Does the acceptance of the gift of a child from the mother, as its sole surviving parent, followed by the performance of parental duties on the part of the donee, create such a relation as that the latter stands in loco parentis? (2) Does the relation created by the facts above stated give the donee the right to maintain an action for the recovery for loss of the services of the child caused by and based upon its tortious homicide?

1. The question as to whether one who is not a parent, but merely stands in loco parentis, can recover for the full value of the life of the child is not involved in this case; and if it were, we are in- clined to the opinion that, this right being dependent upon a statute in derogation of the common law and penal in its nature, can not appertain to one who is not an actual parent. It seems to us, however, that one who sustains to an orphan child the de facto relationship of a parent,—cares for, protects, and ministers to its necessities, expending for the child his care and thought and money as if it were his own, thus performing all the duties of a parent, without objection from any source,—would have created in his be- half a relationship from which the law would imply correlative filial duties (among them the rendering to the person thus standing in loco parentis of such services of value as the child might be able to perform, or should properly be required to perform, under the circumstances), until the child attains its majority.

The petition alleges, that the child involved in the present case was given to the plaintiff by its mother while on her death-bed, and that she was the only surviving parent; that she knew that the child, shortly to be orphaned, would be left without any means of support, and gave him to the plaintiff, relinquishing to the plaintiff all right to the custody, control, and services of her infant boy, in consideration of the plaintiff's agreeing to accept the child and to maintain and educate him until he should be twenty-one years of age. The child was at that time about six months old. It is alleged in the petition that from the time of the gift the plaintiff maintained and educated the child and performed all the duties of a parent toward him, and in doing so incurred an expense averaging about $100 per year,—amounting to more than $1,000. The child, having been sent on an errand by its foster parent, was killed by coming in contact with an electric-light wire belonging to the City of Albany, and the action is brought to recover the value of the child's services until he would have attained his ma- jority.

We need not refer to any phase of the case except to the ques- tion of the plaintiff's right to maintain the action; because the petition is not for any reason demurrable, unless it be upon the ground that this plaintiff is not entitled to recover for the tort, which is well pleaded. If the present plaintiff can not maintain

the action, no one can. In that view of the case the question presented to us becomes both interesting and important, especially so when every humanitarian consideration impels all of us to encourage the care and protection of helpless orphan infants, who would be dependent upon charity, ofttimes too cold, unless the law recognizes that he who, in the kindness of his heart, performs for these helpless ones the tender offices of a parent is also entitled to parental rights. In fact, in such a case as is now before us, if the injured child had not died but were living, maimed for life, the parental obligation of protecting the child during minority could not be performed unless the person exercising the parental duties were given the right to ask for compensation and obtain redress for the injury done to his infant charge. This statement is only illustrative of what we have in mind; for, of course, it can be suggested that an action could be maintained by his next friend for an injury done to an infant; but the point we have in mind is, that, for the very protection of the child himself in a case like the present (in which, according to the allegations of the plaintiff, the death of the child is due to the inexcusable negligence of a third person, and yet there can be no recovery unless the existence of a quasi-parental relation is recognized), it should follow, as matter of law, that if the relationship imposes the bearing of burdens, it also confers the rights usually inherent thereto.

We think that under the spirit of the rulings in *Eaves* v. *Fears,* 131 *Ga.* 820 (2), (64 S. E. 269), *Howard* v. *Randolph,* 134 *Ga.* 691 (69 S. E. 586, 29 L. R. A. (N. S.) 294, 20 Ann. Cas. 392), and *Hicks* v. *Williams,* 135 *Ga.* 433 (69 S. E. 547), it is perfectly sound to hold that one who accepts the gift of a child and, in pursuance of the gift, performs all the parental duties towards it, stands in loco parentis to the child. It is true that in the *Hicks* case and in the *Eaves* case the gift was made by the father, and therefore these cases fall squarely under the provisions of section 3021 of the Civil Code (1910), and that the case of *Howard* v. *Randolph,* supra, was one in which the child sought to maintain an action to recover for service rendered to the person who had occupied the parental relation; but the controlling reason underlying all these rulings is the same, and, therefore, the ruling in a case where the gift was made by the mother as sole surviving parent should be the same as that which applies where the gift is made

by the father, although the relinquishment of parental rights in the case of the father, and the subsequent rights of the donee, are fixed by the code, and even though it is true that under section 3022 the rights of the mother, upon the death of the father, are limited to the possession of the child "until his arrival at such age that his education requires the guardian to take possession of him," and there is no expression of any means by which she can transfer her right to another or substitute any one else in her place. It is also true that section 3022, in defining the obligation of a parent (following the common law), refers to the father, and makes no reference to the mother, and it is insisted that a manifest difference between the rights of the mother and the rights of the father is evidenced by the provision that a minor whose father is dead may, upon attaining the age of fourteen years, select as his guardian some person other than his mother (§ 3035).

All of these considerations depend upon the fact that at common law a legitimate child was largely the child of his father, and but very little the child of his mother, no matter what the circumstances. A reference to two decisions of the Supreme Court at least shows a gradual recognition of greater maternal rights, and section 4424 (which is statutory in its origin) indicates a similar legislative policy. In *Ansley* v. *Jordan,* 61 *Ga.* 488 (6), the Supreme Court declined to decide whether a mother had the right to the service of her son during his minority, and placed its ruling, upholding the refusal of a nonsuit, upon the ground that it was competent for the plaintiff to consent to be hired out by his mother and to represent her as her agent in making the contract upon which the action was based. In *McElmurray* v. *Turner,* 86 *Ga.* 219 (3), (12 S. E. 359), Mr. Justice Simmons sustained the right of the mother to foreclose a special lien on certain crops, not only for her own labor but that of her minor children, upon the theory that as the mother was a widow, and entitled to the possession of her minor children, she was entitled to their labor and their earnings. It does not appear what was the age of the children in that case, but Mr. Justice Simmons says: "Being entitled, under the law, to the possession of the children, she was entitled to their labor and earnings. If she had hired those minor children to the landlord, she could have recovered in an action against him for their hire. This being true, what rule is there in law, or what

reason is there in common sense, which would prevent her from suing out a laborer's lien in her own name for the labor of her minor children, as well as her own labor?"

Even if rulings in this State go no further than to hold that one may stand in loco parentis by virtue of the father's relinquishment of his parental control, we think that, upon reason and principle, the gift of a mother (in a case in which the mother is the sole surviving parent) can create the same relation. The principle is well recognized in other jurisdictions. In Whitaker v. Warren, 60 N. H. 20 (49 Am. Rep. 302), it is held that where an infant dies by the negligence of another, one standing in loco parentis may recover from him for medical expenses and future loss of service up to the time of death. The New Hampshire court did not express any opinion as to whether the plaintiff could have recovered for loss of service after the death of the child and for the period of its infancy; for no such recovery was sought. In the Whitaker case the action was brought for nursing and care after the injury, and for medicines and medical attendance; but the court was compelled to rule, and did rule, upon the general nature of the relationship under a state of facts practically identical with those now before us; and as to this it held that "The facts stated are evidence tending to show that the plaintiff stood in loco parentis to the child, and while this relation existed the plaintiff was entitled to all the rights of a parent," citing Freto v. Brown, 4 Mass. 675; Mulhern v. McDavitt, 16 Gray, 404; Williams v. Hutchinson, 3 N. Y. 312 (53 Am. D. 301), and Cooley on Torts, 235. The ruling of the New Hampshire court is recognized as sound in the Cyclopedia of Law and Procedure (29 Cyc. 1672), in which the principle is broadly stated that "a person in loco parentis may recover, against a wrong-doer who is responsible for the injury to the child, for the resulting expense and loss of services." In Williams v. Hutchinson, supra, it was held that "Persons standing in loco parentis are entitled to the rights and subject to the liabilities of an actual parent, though not legally compelled to assume that relation." We conclude, therefore, that one who, having accepted the gift of a child from its mother (its father being dead), thereafter duly performs the office of a parent to the child stands in loco parentis.

2. Having ruled that the plaintiff stood in loco parentis, her

right to recover is clearly established by numerous adjudications of the Supreme Court. As an actual parent the plaintiff could sue for loss of service caused by the death of a minor child, even at common law and without any statute; the right being assumed to rest upon the same rule which entitles a master to recover for injuries to his servant. See *Shields* v. *Yonge*, 15 *Ga.* 349; *Chick* v. *Southwestern R. Co.*, 57 *Ga.* 357. In *McDowell* v. *Georgia Railroad Co.*, 60 *Ga.* 320, the Supreme Court, while holding that a father could not recover for the homicide of his minor daughter, ruled that he might recover for the loss of her service to the *time of her majority.* The right of a father to recover for the loss of service resultant upon the homicide of his child, from the time of his injury until the child would have been twenty-one years of age, is also recognized in *Augusta Factory* v. *Davis*, 87 *Ga.* 648-650 (13 S. E. 577); *Frazier* v. *Georgia R. Co.*, 101 *Ga.* 70 (28 S. E. 684); *King* v. *Southern Ry. Co.*, 126 *Ga.* 794 (55 S. E. 965, 8 L. R. A. (N. S.) 544); *Southern Ry. Co.* v. *Flemister*, 120 *Ga.* 524 (5) (48 S. E. 160), and *Savannah, F. & W. Ry. Co.* v. *Smith*, 93 *Ga.* 742 (1) (21 S. E. 157). Though one standing in loco parentis by virtue of the gift of a child, followed by acceptance of the gift and performance of parental duties, is not entitled to recover the value of the life of the child in an action based upon the tortious homicide of the child (this because section 4424 of the Civil Code is penal in nature, and the rights conferred must be limited to those only who are expressly mentioned), still he may recover for the loss of its services, upon proper proof that the child was able to render services, and of their value, as if the relation were that of master and servant.

3. The learned counsel for the plaintiff in error argues that under the ruling in *Bell* v. *Central Railroad Co.*, 73 *Ga.* 520, the plaintiff's declaration is demurrable, even if the alleged gift and acceptance be construed as a legal adoption; because section 4412 is declaratory of the common law. Granting that the section cited is declaratory of the common law, it can not be said that the adoption of children (which was unknown to the common law of England) exists only in this State by special statute. The ruling in the *Eaves* case, supra, is proof to the contrary; and if it be conceded that a surviving mother should have the same rights to the parental control and the services of a minor child as the

father would have if he were in life, then there can be no question about this plaintiff's right to recover, unless her right is precluded by the ·provisions of section 3025 of the Civil Code, which gives a minor above the age of fourteen the privilege of selecting a guardian; and we do not think that the bare possibility of such a contingency, which might never have occurred, should deprive one who has for years discharged the obligations of a parent of his reasonable expectancy that the object of his benefaction would, under the influence of natural gratitude, make such return in service as would reasonably have been expected if the orphan had been his actual child.

We find no error in the judgment overruling the demurrer.

*Judgment affirmed.*