### 5054.   ATKINSON *et al.*, receivers *v.* YARBOROUGH.

1. A grandmother who accepted from the mother, with the consent of the father, the gift of an infant grandchild, which the grandmother thereafter raised as her own child, performing for it all parental duties, stands in loco parentis and, in an action for the tortious homicide of the child, is entitled to recover the value of the child's services until majority, where the homicide occurred after the grandmother, on account of her extreme age, had become dependent upon the child's earnings for her support.
2. The allegations of the petition as to the consent of the father to the adoption of his minor child are sufficient to withstand a general demurrer.
3. The question of comparative negligence raised by the pleadings presents issues of fact which can properly be determined only by a jury, and there was no error in overruling the general demurrer to the petition.
                    DECIDED NOVEMBER 25, 1913.

Action for damages; from city court of Fitzgerald—Judge Griffin. June 27, 1913.

*Bolling Whitfield, Elkins & Wall,* for plaintiffs in error.
*McDonald & Grantham,* contra.

RUSSELL, C. J.   The plaintiff filed a petition alleging that the death of one John Carswell, a boy 17 years old, was due to the negligence of the defendant, and, under the provisions of section 4424 of the Civil Code, averred that she was entitled to the value of Carswell's services until he reached his majority. The plaintiff's right

to recover rests upon the proposition that, as related to John Carswell, she stands in loco parentis, and that, being over 75 years of age and dependent upon the earnings of the deceased for a livelihood, she is entitled to maintain this action for his tortious homicide. It is alleged in the petition that the plaintiff was the grandmother of John Carswell, and that when he was but three or four days old his mother, the petitioner's daughter, when at the point of death and before dying, requested her to take charge of him and provide for him as if he were her own son, "and then and there gave the said child . . to petitioner, to keep, rear, and maintain as if he were her own child, and petitioner then and there accepted the gift of said child." It is further alleged, that the father of said John Carswell, about the same time, consented to the gift as made by his dying wife, and that the father never exercised any parental control or authority over the child, but the same remained in the petitioner as it had been committed to her by the father and mother of the said child; and therefore the petitioner supported and maintained said child as if he were petitioner's own child, and during the years when it was too young to work it was supported and cared for by petitioner. It is further alleged that from the time John Carswell was large enough to work he did so, and his earnings, in accordance with the gift, were turned over to the plaintiff, and that he thus contributed to the plaintiff's support for several years prior to his death.

So far as the provisions of section 4424 of the Civil Code affect the present case, recovery is confined to the mother, and the question presented, therefore, is whether the allegations of the petition are such as make the plaintiff in legal effect the mother of the deceased. Upon this point we think the case is controlled by the decision of this court in *City of Albany* v. *Lindsey,* 11 *Ga. App.* 573 (75 S. E. 911). The only difference between these two cases, so far as appears from the record, is that in that case the father was dead, whereas it is to be assumed in the present case that the father of John Carswell is still alive. But we think the allegations as to the father's consent and his subsequent conduct during the remainder of the child's life are such as to show a complete renunciation of parental control within the terms of section 3021 of the Civil Code. By special demurrer the defendant might have objected to the allegation in reference to the father's renunciation of

parental control, and have compelled a more specific statement of the circumstances attending the father's consent to the adoption of the child by the grandmother; but as against a general demurrer the statements of the petition are sufficient to imply a release of the father's rights to the grandmother, either by voluntary contract, by consent to its adoption, or from the failure of the father to provide those necessaries for his child which otherwise he would have been legally obliged to supply. Proper special demurrer might have developed the fact that the father had not renounced his right of parental control in any of the ways defined in the code section, but in the absence of special demurrer it is plainly to be inferred from the petition that even if there was not an adoption of the child by its grandmother under the forms of law, there was an oral contract by which the father surrendered his parental rights, and that thereafter he neither exercised any control nor supplied any necessaries toward its support. As to this see *Eaves* v. *Fears,* 131 *Ga.* 820 (64 S. E. 269). It may be that a special demurrer would have developed the fact that the father did not consent to a total renunciation of parental control, but, as stated above, under the ruling in the case of *Eaves* v. *Fears,* supra, it must be conceded, from the allegations in the petition, that the father did absolutely renounce all his rights, and therefore the fact that he still is in life is of no consequence.

In the brief of learned counsel for the plaintiff in error it is insisted that the case presents, as additional features for consideration, (1) an attempted recovery of damages for the death of an employee occurring within the yard limits of a railroad; (2) that the death of the decedent might have been prevented by the exercise of ordinary care upon his own part; and (3) that the provisions of the act of 1909 (Civil Code, § 2782) are not applicable, since the plaintiff did not have the rights conferred by that act at the time the child was given her by the mother. As to the first proposition, we are of the opinion that the statement that the deceased was an employee of the railroad company is not material to the action, but is made merely by way of inducement and as part of the history of the case. As to the second feature it is only necessary to say that the question of the comparative negligence of the parties is one so wholly for determination by the jury that the the trial judge very properly declined to deal with it on demurrer.

As to the point raised in reference to the act of 1909 : It is true that the gift of the child occurred before the passage of the act fixing the liability of employers (Civil Code, § 2782), and, as argued by counsel, the plaintiff could not at that time have claimed any benefit under this statute, but if at the time of the homicide the plaintiff occupied the position of a parent to the deceased, her rights would be fixed by that fact and her relationship to the deceased. Even if she had been the natural mother of the deceased, no rights would have accrued to her under the act of 1909 in consequence of a wrong committed before the passage of the act of 1909 ; but if at the time of the homicide the plaintiff stood in loco parentis, her rights would be the same as if she were the natural mother. Consequently we have no hesitation in holding that the present cause of action is not affected by reason of the fact that the act of 1909 had not been passed when the plaintiff assumed parental care and control of the deceased; and since it appears that the homicide occurred subsequently to the act of 1909, if she at that time stood in loco parentis she is entitled to any benefits that might accrue, just as if she had been the real mother of the deceased. Each proposition presented by counsel for the plaintiff in error was ably and exhaustively argued, but none of them, in our opinion, requires further discussion, for the reason that the allegations of the petition seem sufficient to place the plaintiff in loco parentis; and, consequently, under the ruling in the *Lindsey* case, supra, the court did not err in overruling the general demurrer.                                   *Judgment affirmed.*