68084. SUTTER et al. v. TURNER et al.
68085, 68110. HUTCHINGS et al. v. TURNER et al.;
and vice versa.
(325 SE2d 384)

POPE, Judge.

These appeals arise from an automobile collision which occurred at approximately midnight on the evening of December 17, 1981 at the intersection of West Wesley Road and Northside Parkway in Atlanta, Georgia. Carlton Reid Turner, then seventeen years old, was driving a car registered to his stepfather, Jefferson W. Pruett, Jr. Turner was driving south on Northside Parkway when he struck a car driven by David F. Sutter who was proceeding westbound through the intersection. As a result of the injuries he received in the collision, Mr. Sutter died soon thereafter.

When the collision occurred, Turner had just left the residence of

Mrs. Susan Hutchings, located approximately three and one-half miles away from the collision scene, at which Turner had been a guest at a party given by Mrs. Hutchings' seventeen-year-old daughter, Elizabeth. The guests at the party were Elizabeth's friends, most of whom were seventeen or eighteen-year-old high school students. Elizabeth had purchased a small keg of beer for the party. Mrs. Hutchings became aware of the presence of the keg for the party when she came home to find it there before the guests arrived. Although she was not at home later when the party began, she returned at approximately 10:30 p.m. when the party was in progress. Mrs. Hutchings was then aware of the availability of beer to Elizabeth's guests but did nothing to stop their consumption of it. She visited with Elizabeth's guests for the next hour or so. At one point, she joined a group of guests who were sitting at the breakfast table playing a game called "Quarters," the object of which was to get the participants to drink beer. The players spent a few minutes trying to teach Mrs. Hutchings to play. Turner was among these participants, but Mrs. Hutchings did not know his age and had not met him prior to the December 17th party.

By deposition Turner testified that he had consumed the equivalent of seven bottles of beer at Elizabeth's party. In her deposition Mrs. Hutchings testified that she saw Turner leave her home at approximately 11:30 p.m. She denied noticing that he was intoxicated at that time or expressing any concern as to his condition. However, this is disputed by the affidavit of a guest at the party, John Pietri, which states that at the time when Turner began to leave the party, Pietri noticed that he was probably intoxicated and that Mrs. Hutchings had then asked Turner if he was able to drive safely. Further, according to Pietri's affidavit, after Turner left the house Mrs. Hutchings expressed to Pietri her concern about Turner's condition. After Turner left the Hutchings' party and while driving to another party, the collision occurred which killed Mr. Sutter.

Bonnie Sutter, individually and as executrix of her husband's estate, filed an action against Turner and Pruett, his stepfather, under the family purpose doctrine. The action sought to recover damages for the wrongful death of Mr. Sutter and for medical expenses incurred as a result of his injuries. Mrs. Sutter later added Mrs. Hutchings and Elizabeth Hutchings as defendants, alleging their negligence in furnishing alcoholic beverages to Turner, allowing him to become intoxicated and then to drive a car away from their home. Turner and Pruett each then filed cross-claims against Mrs. Hutchings and Elizabeth. Both Turner and Pruett asserted that if Turner is found to have been negligent, the Hutchings are joint tortfeasors and also liable. Additionally, Pruett's cross-claim asserted two theories under which he claims the Hutchings would be liable to him in the event of an award

in favor of Mrs. Sutter: (1) that any negligence found on his part is passive and the Hutchings' negligence proximately caused Mr. Sutter's death; (2) that an award to Mrs. Sutter is recoverable by Pruett from the Hutchings under OCGA § 51-1-18 (a).

The Hutchings' motion for summary judgment in the action for damages brought by Mrs. Sutter was granted. Mrs. Sutter appeals that order in Case No. 68084; Turner and Pruett appeal it in Case No. 68110. The trial court denied the Hutchings' motion for summary judgment as to the cross-claims of Turner and Pruett. The Hutchings appeal in Case No. 68085.[1]

### Case Nos. 68084 and 68110

1. Appellants Sutter, Turner and Pruett advance arguments so similar in opposition to the trial court's grant of summary judgment to the Hutchings that both appeals will be addressed together. The ultimate issue before this court is whether a social host who knowingly furnishes alcoholic beverages to an intoxicated person, here a minor, can be held liable for injuries then negligently inflicted upon a third person caused in some part by the intoxication of the actor. Since there are obvious genuine issues of material fact in this case, the trial court apparently concluded in granting summary judgment to the Hutchings, the social hosts, that as a matter of law they could not be held liable for Turner's actions regarding the collision. Under the present stance of Georgia law on this subject, we are constrained to agree.

In an exhaustive explanation of Georgia law on the question before us now, this court in *Keaton v. Kroger Co.*, 143 Ga. App. 23 (237 SE2d 443) (1977), addressed the following issue: "What is the liability of one who supplies alcohol to a minor, for injuries sustained by another at the hands of the intoxicated minor?" After noting that no dramshop act nor civil damage statute exists in Georgia law to impose vicarious liability upon one who sells or furnishes alcoholic beverages for injury inflicted by intoxicated persons upon a third party, this court there held to the common law rule that there is no such liability. See *Henry Grady Hotel Co. v. Sturgis*, 70 Ga. App. 379, 385 (28 SE2d 329) (1943). See also *Belding v. Johnson*, 86 Ga. 177 (12 SE 304) (1890). See generally *Shuman v. Mashburn*, 137 Ga. App. 231 (2) (223 SE2d 268) (1976). This position was recently reaffirmed in

---

[1] These appeals are properly before this court. The trial court's order granting summary judgment to two of the four defendants complied with OCGA § 9-11-54 (b). Thus, Case Nos. 68084 and 68110 are directly appealable. The order appealed from in Case No. 68085 was certified by the trial court for immediate review. After application, this court granted interlocutory review of the order denying the Hutchings' motion for summary judgment on the cross-claim of Turner and Pruett.

*Nunn v. Comidas Exquisitos, Inc.*, 166 Ga. App. 796 (305 SE2d 487) (1983), a case in which the one served the alcoholic beverages was not a minor, but a noticeably intoxicated person. Accord *Riverside Enterprises, Inc. v. Rahn*, 171 Ga. App. 674 (320 SE2d 595) (1984).

Statutes enacted to make criminal the offenses of selling or otherwise furnishing alcoholic beverages to minors or noticeably intoxicated persons have been in both *Keaton* and *Nunn* held insufficient to impose tort liability upon the provider of the alcoholic beverage in a civil suit brought by the party injured by the intoxicated person. See OCGA §§ 3-3-22, 3-3-23, 3-3-23.1. "[T]he violation of liquor laws cannot be analogized to other types of negligence per se . . . [L]egislation is required which directly imposes liability in derogation of the common law." *Keaton v. Kroger Co.*, supra at 27.

In *Keaton*, it was recognized that Georgia law has long provided a civil damage statute authorizing a recovery in tort by the parent against the supplier of the alcoholic beverages to the parent's minor child. OCGA § 51-1-18 (a). In determining the effect of this statute upon the issue of the supplier's liability to a third person, the court stated that the statute had "never been amended to create such a right in a third person as in the present case, nor has any other statute so provided.

"Now what is the rule where the legislature, in addition to enacting liquor statutes criminal in nature, legislates further and makes the person furnishing the liquor liable in certain situations? It is that the legislature has preempted the field of civil liability with a resulting limitation of liability for negligence per se to the confines of the criminal statute; and this is true even though, as here, the remedy provided for by the statute imposing civil liability is not coextensive with the wrongs declared by the criminal statutes. [Cits.]

"The only conclusion possible here is that the legislature, by providing a civil remedy for the parent only in [OCGA § 51-1-18 (a)], has preempted the field and restricted third-party recovery to the terms of that section. [Cits.]" *Keaton v. Kroger Co.*, supra at 29. Further, as stated in *Keaton* and reiterated in *Nunn*, "we cannot, as a court, short of a policy decision, create the legal position that such negligence [in selling or otherwise furnishing alcoholic beverages to a minor or noticeably intoxicated person] can be extended to an injured third party in the absence of a specific statutory synapse. There being no statutory declaration in this state, this is a matter best left to the General Assembly." *Keaton v. Kroger Co.*, supra at 30.

Although appellants correctly point out that the factual postures of the cases relied upon, *Keaton* and *Nunn*, involve the sale of alcoholic beverages, we do not agree that these cases are, thus, inapplicable to this case in which the beverage was gratuitously provided. No actual legal distinction between the two was made in common law

upon which this opinion is based. See *Henry Grady Hotel Co. v. Sturgis*, supra at 385-6. Nor do we find such a distinction in *Nunn* or *Keaton*, which speak in terms of selling, supplying, and furnishing. Additionally, the statutes cited with these cases, as well as within this opinion, use the terms sell, furnish, barter, exchange, give, and provide. See OCGA §§ 51-1-18 (a), 3-3-22, 3-3-23, 3-3-23.1. For the foregoing reasons, we find no error in the trial court's grant of summary judgment to the Hutchings in the action for damages brought by Mrs. Sutter.

*Case No. 68085*

2. The Hutchings appeal the denial of their motion for summary judgment on the cross-claims brought against them by Turner and Pruett. The only count of Turner's cross-claim and Counts One and Two of Pruett's cross-claim are premised upon a joint tortfeasor theory of liability. Under our foregoing decision in Case Nos. 68084 and 68110, the Hutchings are not liable in tort, as a matter of law, for the death of Mr. Sutter resulting from the collision of his automobile with that driven by Turner. Under Georgia law, they cannot be tortfeasors at all in Mrs. Sutter's claims. Thus, they cannot be found to be joint tortfeasors with Turner and Pruett in regard to the same claims. "[W]here the proposed third-party defendant[s] cannot be made liable as . . . joint tortfeasor[s,] the third-party complaint does not state a claim." *Southern R. Co. v. Brewer*, 122 Ga. App. 292, 293 (176 SE2d 665) (1970). See *Eschen v. Roney*, 127 Ga. App. 719 (194 SE2d 589) (1972). The trial court erred in denying summary judgment to the Hutchings on Turner's single count cross-claim and on Counts One and Two of Pruett's cross-claim.

The third count of Pruett's cross-claim presents a much closer question. In that count, Pruett asserts the Hutchings' liability to him under OCGA § 51-1-18 (a) which provides: "A father or, if the father is dead, a mother, shall have a right of action against any person who shall sell or furnish alcoholic beverages to his or her underage child for the child's use without the permission of the child's parent." "The effect of this section of the code is to declare the act to which it refers *to be a tort*, and to give the *parent* a right of action therefor." (Emphasis supplied.) *Wright v. Smith*, 128 Ga. 432, 433 (57 SE 684) (1907). See generally *Reeves v. Bridges*, 248 Ga. 600 (284 SE2d 416) (1981). In a claim made pursuant to OCGA § 51-1-18 (a), both general and special damages may be recovered. See *Wright v. Smith*, supra.

We have, thus, no doubt that if Pruett were bringing the cross-claim as Turner's *father*, he would be entitled to maintain it against the Hutchings for supplying alcoholic beverages to his underage son. However, Pruett is *not* Turner's father; he is his stepfather. The rec-

ord reflects the fact that Turner's natural parents were divorced in 1970. In 1975, Pruett married Turner's mother, Dr. Beavers. Turner and his siblings have resided with their mother and stepfather since 1975. Turner's contact with his natural father during this period has consisted of the visitation established in the divorce agreement between the natural parents. Pursuant to this agreement, Turner's father has paid to Dr. Beavers support and maintenance for Turner. All other money for Turner's support has come from the joint funds of Pruett and Dr. Beavers. Pruett has never formally adopted Turner.

The language of the statute is quite clear as to the party who is authorized to sue the one who supplied the alcoholic beverages to Turner. This right of recovery is limited to the father or if the father is dead, the mother. We believe this to mean the natural father. The term "parent" is defined for purposes of domestic relations law as the natural or adoptive parents of a child. OCGA § 19-11-3 (5). "The word 'parent' means the lawful father or mother." *Weems v. Saul*, 52 Ga. App. 470 (1) (183 SE 661) (1936). One to whom custody has been relinquished has been held to have a right of recovery in tort for the loss of the child's services. See *Stoddard v. Campbell*, 27 Ga. App. 363 (1) (108 SE 311) (1921); *Atkinson v. Yarborough*, 13 Ga. App. 781 (1) (80 SE 29) (1913); *City of Albany v. Lindsey*, 11 Ga. App. 573 (3) (75 SE 911) (1912). However, recovery by the stepchild has been denied for the wrongful death of his stepparent who stood *in loco parentis* to the stepchild, even where the stepchild depended upon the deceased for support. See *Marshall v. Macon Sash, Door &c. Co.*, 103 Ga. 725 (30 SE 571) (1898); *Weems v. Saul,* supra at (2). Pruett points to the inclusion of stepchildren and stepparents in the section listing those presumed to be dependent for purposes of the Workers' Compensation Act. OCGA § 34-9-13 (a) (2). However, in including those not related by blood, the legislature specifically extended the meanings of "child" and "parent" to give a right which would not otherwise have existed under Georgia law. See *Travelers Ins. Co. v. Williamson*, 35 Ga. App. 214 (132 SE 265) (1926).

While we are aware of the possibility of an inequitable result based upon the factual posture of the appeal before us, we see also the possibility of a multiplicity of actions when the right of recovery for a single act is extended beyond the terms of this statute. In this case, we find nothing to indicate that Turner's natural, living father has done anything to sever his parental ties with Turner or to lose his parental power regarding Turner. See OCGA § 19-7-1 (b). We further note that if the father is dead, the right to sue is then in Dr. Beavers, Turner's mother. Therefore, we find that Pruett, as the stepfather, is not entitled to recover against the Hutchings pursuant to OCGA § 51-1-18 (a). The trial court erred in denying the Hutchings' motion for summary judgment on Count Three of Pruett's cross-claim.

*Judgments affirmed in Case Nos. 68084 and 68110. Judgment reversed in Case No. 68085. Banke, P. J., and Benham, J., concur.*

DECIDED JULY 13, 1984 —
REHEARING DENIED JULY 31, 1984

*Burt DeRieux, Steven J. Misner,* for appellants (case no. 68084).
*Stephen L. Cotter, Robert M. Travis, Robert L. Connelly, Jr.,* for appellees.
*Stephen L. Cotter, Jonathan M. Engram,* for appellants (case no. 68085).
*Robert M. Travis, Robert L. Connelly, Jr., Burt DeRieux, Steven J. Misner,* for appellees.
*Robert M. Travis, Robert L. Connelly, Jr.,* for appellants (case no. 68110).
*Steven L. Cotter, Burt DeRieux, Steven J. Misner,* for appellees.