(No. 21705.—

FRED M. FABER, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MYRA L. JOHNSTON, Defendant in Error.)

*Opinion filed February 23, 1933—Rehearing denied April 13, 1933.*

McKenna, Harris & Schneider, (George A. Schneider, and Abraham W. Brussell, of counsel,) for plaintiff in error.

Victor P. Michel, and George Z. Barnes, for defendant in error.

Mr. Chief Justice Heard delivered the opinion of the court:

Myra L. Johnston filed an application for adjustment of claim with the Industrial Commission on October 15, 1931. The application asked compensation for accidental injuries sustained by Paul E. Johnston, arising out of and in the course of his employment by Fred M. Faber, etc., which injury resulted in the death of Johnston on May 4, 1931. The arbitrator found by decision dated December 7, 1931, that the relationship of Myra L. and Paul E. Johnston, deceased, had existed for over twenty years; that

the petitioner was dependent upon the deceased at the time of his death and should be entitled to an award but the evidence showed that no blood relationship existed; that the petitioner never had legally adopted the deceased, but took him at the time he was three or four weeks old and raised him as her own son. Accordingly the arbitrator ordered Faber to pay to her a sum not to exceed $150 for burial expenses and a sum not to exceed $300 to the special fund of which the State Treasurer is *ex-officio* custodian, the above payments to be made within sixty days. A petition to review the decision of the arbitrator was filed with the Industrial Commission by the petitioner on December 31, 1931. The Industrial Commission reversed the decision of the arbitrator and found that the earnings of the deceased during the year next preceding the injury and death were $780 and that the average weekly wage was $15; that a condition of *loco parentis* existed over a period of twenty years between the petitioner and the deceased, and that while she was not the natural mother of the deceased, her relation was the same as "parent" within the meaning of the Compensation act as referred to in section 7, and that the deceased left him surviving as his sole beneficiary under the provisions of the Workmen's Compensation act, the petitioner, whom he was under moral obligation to support at the time of his injury and death, and ordered that the respondent pay to her for her support and maintenance the sum of $7.50 a week for a period of 220 weeks as compensation on account of his death. A writ of *certiorari* issued, and the matter was duly heard by the circuit court of Peoria county, and on July 1, 1932, the court entered an order confirming the decision of the Industrial Commission of March 19, 1932.

The facts are undisputed. The evidence shows that Myra L. Johnston was married in Springfield, Illinois, in 1903. Her husband died May 12, 1916. In 1910 she saw Paul E. Johnston, the deceased, at the Proctor Hospital,

in Peoria, Illinois. He was then a child four weeks old. She took him and mothered him as her own son. At that time she was living with her husband, and the deceased lived at her home from the time he was four weeks old up to May 4, 1931, when he died as the result of an accident. He never lived at any other home and carried the name of Johnston. She never adopted him in court. He called her mother. Up to the time he was able to work she supported him. He began to work at the age of eight, and up to the time of his death he gave all of his money to Mrs. Johnston, who clothed him and both of them lived on the money. She was dependent on him for support at the time of his death. She had only one child born to her, which died at the age of seven months. She did not know the name of the father or mother of Johnston.

Paragraph 207 of chapter 48 (Cahill's Stat. 1931, p. 1406,) provides that the compensation which shall be paid for an injury to an employee resulting in death, where the employee leaves no widow, husband, child or children whom he was under legal obligation to support at the time of his injury and does leave any parent totally dependent upon the earnings of the employee, shall be paid to such parent. The only question involved in this case is whether or not Myra L. Johnston is entitled to compensation by reason of this provision.

At common law or under the Personal Injuries act the right to damages where an employee suffered death or injury was vested. Compensation under the Workmen's Compensation act is analogous to and is to take the place of damages at common law and under the statute. The Workmen's Compensation act is based on the broad economic theory that death or injury to an employee arising out of and in the course of employment is an incident of industrial activity and production, and that compensation therefor is properly chargeable as a part of the cost of such activity and production. (*Wangler Boiler Co.* v. *Industrial*

*Com.* 287 Ill. 118.) The Compensation act should be liberally construed in order to accomplish its purpose of making a speedy disposition of the claims of injured employees (*Illinois Indemnity Exchange* v. *Industrial Com.* 289 Ill. 233,) and so as to give effect to the purpose and object of its adoption. (*Chicago Cleaning Co.* v. *Industrial Board,* 283 Ill. 177.) It should be given a practical construction and should not be made to depend upon fine-spun theories, based upon scientific technicalities. (*Juergens Bros. Co.* v. *Industrial Com.* 290 Ill. 420.) A cause of action for the death of a human being was unknown to the common law. Statutes creating the cause of action have been passed, sometimes providing for a recovery by an administrator and sometimes for the person entitled to receive damages. It is purely a matter of statutory regulation. In this State, under the Injuries act, (sometimes called the Lord Campbell act,) the action must be brought by the administrator. The Workmen's Compensation act takes away all causes of action for the death of an employee and provides compensation according to an established scale. (*Mississippi Power Co.* v. *Industrial Com.* 289 Ill. 353.) The act is intended for the protection of workmen and their families, and is to be so interpreted as to effectively remedy the ills intended to be remedied.

In Webster's New International Dictionary the word "parent" is defined as follows: "One who begets, or brings forth, offspring; a father or a mother. Parent is sometimes used popularly and in statutes to include persons standing *in loco parentis* other than the natural parents, as in Lord Campbell's act, where it is defined to include father, mother, grandfather, grandmother, step-father or step-mother; and it is sometimes construed as equivalent to ancestor, and regularly so in certain cases in the civil law." In *Brush* v. *Blanchard,* 18 Ill. 46, it is said: "The husband is not, from the fact of marriage with the mother of minor children, bound to support them. As to him, so far as any

obligation arising out of the marriage is concerned, they are strangers. He is not entitled to their custody or labor nor is he bound to provide for them. (*Gay* v. *Ballou,* 4 Wend. R. 403; *Freto* v. *Brown,* 4 Mass. R. 675; *Cooper* v. *Martin,* 4 East. R. 77; *Tubb* v. *Harrison,* 4 Term R. 118; 2 Kent's Com. 192.) He may, however, by admitting them into his family and treating them as members thereof, voluntarily assume the relation to them of parent. Where this is done the step-father stands in the place of natural parent, and the reciprocal rights, obligations and duties of parent and child attach and continue so long as this mutually assumed relation continues, and the step-child in such case is not entitled to recover for services rendered nor is the step-father entitled to pay for support. * * * Here the evidence shows that the relation of parent and child was voluntarily assumed by the act of the parties, and there is no evidence of an express contract to pay for services, nor are there any facts in evidence from which such contract can be implied."

The doctrine that a person by admitting a child permanently into his family and treating it as a member thereof voluntarily assumes the relation to it of parent and stands in the place of a natural parent, and that the reciprocal rights, obligations and duties of parent and child attach and continue so long as this mutually assumed relation continues, has never been repudiated by this court since its announcement in the *Brush case,* over seventy-five years ago, but has been reiterated in *Bond* v. *Lockwood,* 33 Ill. 212, *Mowbry* v. *Mowbry,* 64 id. 383, *Capek* v. *Kropik,* 129 id. 509, and other cases. Among these reciprocal rights of parent and child is the right of the child to support and the right of the parent to the wages and ordinary earnings of the one to whom he stands *in loco parentis.* (*Magee* v. *Magee,* 65 Ill. 255; *Howard* v. *Randolph,* 68 S. E. 586; *Brinderhoff* v. *Merselis,* 24 N. J. L. 683; *Wetherby* v. *Dixon,* 19 Ves. Jr. 412; 20 R. C. L. 593; *Larsen* v.

*Hansen,* 16 Pac. 5; *McGarr* v. *National and Providence Worsted Mills,* 53 Atl. 320; *Yusky* v. *Chief Consolidated Mining Co.* 236 Pac. 452; *Buclke* v. *Levenstadt,* 214 id. 42; *Eickhoff* v. *Sedalia Railway Co.* 80 S. W. 966; *Starkey* v. *Perry,* 12 Pac. 508.) Among these rights, prior to the adoption of the Compensation act, was the right to sue the employer or any other person for wrongful injuries to the son resulting in the loss of his services by the parent or person standing *in loco parentis.* (*Saunders* v. *Aloido,* 113 S. W. 992.) In the *Saunders case* it was said: "The rights and duties of one standing *in loco parentis* seem to have been uniformly held by the courts to be the same as those of the parent, and any cause of action accruing to a parent by reason of such relationship would under similar circumstances accrue to one standing *in loco parentis.*" See, also, *City of Albany* v. *Lindsey,* 75 S. E. 911, and *Whitaker* v. *Warren,* 60 N. H. 20.

In *Maryland Casualty Co.* v. *Coleman,* 295 S. W. 1044, the Supreme Court of Kentucky said: "We have held in a long line of cases that the Workmen's Compensation act must be given a liberal construction in order to carry out its wise and benevolent purposes. We do not think that the legislature ever contemplated that where the dependents of the deceased employee, and such employee in his lifetime, were all living together in the same household, the right of compensation should turn on the technical ownership of the household. The purpose of the act was to give compensation to those who were dependent on the earnings of the deceased employee, and that, although where the dependents did not come within any specific designation set out in the statutes, the legislature was unwilling that the employer should be liable, in any event, to those dependent on the deceased employee, yet it felt that where the dependents and the deceased employee were all living together, that such state of fact justified the requirement that compensation be paid." As to the meaning of the term "child

of an employee," reference is made to *Portin* v. *Portin*, 261 S. W. 362, *Kinnard* v. *Tennessee Chemical Co.* 7 id. (2d series) 807, and *Memphis Fertilizer Co.* v. *Small*, 22 id. (2d series) 1037, in holding that persons to whom the deceased employee stood *in loco parentis* were children of the employee. In the *Kinnard case* it was said: "It is apparent that if a step-child or an illegitimate child or an adopted child is entitled to compensation under the act the test of liability cannot be made to depend upon the relationship which the child bore to the deceased workman, but the test is whether such child was wholly dependent upon such workman for support."

The plaintiff in error cites *Murrell* v. *Industrial Com.* 291 Ill. 334, *Marshall* v. *Industrial Com.* 342 id. 400, and *Superior Coal Co.* v. *Industrial Com.* 304 id. 320, as conclusive that the term "parent," in the Workmen's Compensation act, means the lawful father or mother by blood and does not include a relationship of *loco parentis.* There is nothing in any of these cases which militates against defendant in error's contention that by reason of the fact that Myra L. Johnston was *in loco parentis* to the employee, under the Workmen's Compensation act she should be held to be a parent of the employee. The only question involved in *Murrell* v. *Industrial Com.* was whether or not the illegitimate child of a male workman was entitled to compensation for the employee's death, and it was held that such child did not come within the meaning of the act, and that *prima facie* the word "child" or "children," when used in a statute, will or deed, means legitimate child or children, and will not be extended by implication to embrace illegitimate children unless such construction is necessary to carry into effect the manifest purpose of the legislature, the testator or the grantor. In that case the question of the status of one who stands *in loco parentis* to the employee was not raised, discussed or apparently involved. In the *Superior Coal Co. case,* in holding that a child was

entitled to compensation as a dependent upon its grandfather, under circumstances which would render the grandfather's status that of *loco parentis* to the grand-daughter, the court said: "Dependence on another for support may rest upon either a moral or legal duty, and the moral duty to provide for another is recognized as creating the relation equally with a legal obligation. (*Royal League* v. *Shields,* 251 Ill. 250.) Moral obligations may, and frequently do, arise out of family relations which carry with them a sanction different from that attending a legal duty but generally equally effective to secure the performance of the duty." In the *Marshall case* by stipulation of the parties the only controverted questions before the court were: "First, is the mother of an illegitimate child a parent within the provisions of the Workmen's Compensation act; and second, if so, was the claimant in fact dependent on the deceased, who was her illegitimate son," and it was held that she was the mother of such child and dependent upon the deceased employee and hence entitled to compensation. The right of a woman standing *in loco parentis* to the employee, upon whom she was dependent, to receive compensation under the Compensation act does not seem to have been discussed or involved in that case. The decision in the *Marshall case* is not in conflict with the one here.

The evidence clearly shows that Myra L. Johnston stood *in loco parentis* to Paul E. Johnston, the deceased employee, and that she was dependent upon him for her support at the time of his death, which occurred at a time and place and under circumstances which rendered his death compensable. Under these circumstances the circuit court of Peoria county did not err in holding that she was entitled to compensation under the Compensation act.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*