(No. 2985—

J. BINNIE WOLFE, ADMINISTRATOR OF THE ESTATE OF CHARLES R. MILLER, DECEASED, AND EDITH MILLER, SUBSTITUTED CLAIMANT, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 14, 1939.*

ROSWELL B. O'HARRA and JOHN L. FISHER, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

The original claim herein was filed by Charlie R. Miller on September 23, 1936, alleging that while working as a laborer in the Highway Division of the Department of Public Works and Buildings, on September 25, 1935 on S. B. I. Route No. 9 in McDonough County, he suffered accidental injuries which resulted in loss of time and disability which necessitated an operation for the removal of a tumor and the right testicle. Claimant sought an award of Six Thousand ($6,000.00) Dollars for temporary and partial permanent disability. On December 4, 1936 Roswell B. O'Harra as attorney for claimant filed a report of the death of claimant.

Leave of court being first had and obtained on March 9, 1937, J. Binnie Wolfe, administrator of the estate of Charlie R. Miller and Edith Miller, surviving widow of decedent, filed herein their amended and supplemental complaint.

The case comes before the court upon the foregoing and the transcript of evidence and the written briefs of the respective parties filed herein, together with a report by Theo. Plack, District Engineer for the Division of Highways, filed herein on July 13, 1938.

From the record it appears that Charlie R. Miller was working with one Sherman Adair cleaning ditches along the highway on September 25, 1935; that they had a piece of sod about five feet long two feet wide and six inches thick which they were attempting to lift with their shovels from the ditch onto a truck; that when they had the sod almost to the top of the truck Adair's shovel slipped and the entire weight of the sod was thrown upon Miller.

Adair testified that Miller immediately complained of having hurt his back or side; that "he seemed in quite intense pain—he seemed to have quite a bit of pain at once." This happened in the afternoon and they continued to work that afternoon.

His wife, Edith Miller, testified that the next day it rained and no work was attempted; that he went back to work the following day and worked for the next three days until that particular job was finished, and that he did not work from that time until his death. She further testified that he was in apparent pain all the time, that the right testicle began to swell and that there was no apparent bruise but there

was a redness on the testicle. He went to Dr. B. A. Harrison at Colchester on October 7, 1935. The patient was treated by the latter and the doctor attempted to diagnose his trouble. In December he was taken to Dr. Arp at Moline. The latter's examination pronounced his condition to be the result of a strain, and the Doctor instructed him to continue under the care of Dr. Harrison. In January he and another man attempted to open up a coal mine but he was only able to work one morning. He then went to a Dr. Dillon whose only treatment was to give him something to relieve the pain from which he was suffering. At Dr. Harrison's request Mrs. Miller took her husband to a hospital at Iowa City. X-ray pictures and blood tests were taken and an operation was performed and the right testicle which was found to be a malignant tumor was removed. He was then removed to his home where he died three weeks later, on October 9, 1936.

The deceased was in apparent good health and physical condition prior to the day of his accident. His wife testified that he had never been sick from the time they were married in June, 1929, and had never had any injury that she knew of prior to that on September 25, 1935. Sherman Adair testified that he had known the deceased for approximately a year and a half before the accident, and had worked with him on the hard road for some time prior to that date; that they were working in the same gang and that Miller was in apparent good health and possessed of ordinary physical strength and ability. Archie Martin testified that he was maintenance patrolman, had known Charlie Miller all of his lifetime; that he had hired him for this job. The witness saw Miller about ten days after the accident when the latter was on his way to see Dr. Harrison. Martin got a medical report from Dr. Harrison and sent it to the State Highway Department at Peoria, later sending a second report. This witness further testified that he had seen Charlie Miller working prior to the day of the accident; that he was apparently ablebodied and able to do a man's work. The witness further testified that he saw Miller from time to time after the accident; that he then complained of severe pain and that he rapidly fell off in weight.

Another witness, Thomas Booth, testified that he had worked with Charlie Miller on a W.P.A. project prior to September 25, 1935; that he had also worked with Miller in coal-

mining; that prior to the time of his accident Miller was apparently ablebodied and able "to carry a full load."

Dr. Clarence Van Epps testified that he is associated with the Medical School of the University of Iowa and specializes in nervous diseases; that in addition thereto he engages in private practice and in the course thereof saw Charlie R. Miller on August 30, 1936 at the hospital in Iowa City; that Miller at that time was emaciated and had an enlargement of about two hundred (200) per cent of the right testicle which was hard and irregular; that a complete medical examination of the patient was made which disclosed enlarged glands in the groin with abdominal pains suggesting testicular malignancy with retro-peritoneal. The doctor was given a history of the accident and testified that he did not think the trauma described to him was the essential cause of the testicular tumor. The doctor further testified that it is not possible in a case of malignant tumor to definitely state the cause thereof; that some malignant tumors are of traumatic origin but that in his opinion the testicular tumor which he found in this patient was not of traumatic origin. The doctor modified this opinion in cross-examination by stating that if the history of the case disclosed the patient was struck on the right testicle at the time of the accident it would have made a difference in his conclusion.

The wife of Charlie R. Miller testified that when he came home from work on September 25, 1935 he told her of his accident. That during the days that followed he complained constantly of pain. That there were no bruises apparent; that there was a swelling in the right testicle and that there was a redness there for three or four days after the accident. Claimant began to lose weight, then in January he began to feel better. The pain was not so severe and had moved into his side, but when he attempted to open a coal mine he was unable to do the work and Dr. Harrison ordered him to a hospital. The operation there resulted in the removal of the right testicle with a laboratory report of malignant tumor. According to the record Mr. Miller was never sick from the time of his marriage in June, 1929 until after the accident in question. That he was ill continually after that time until his death. A coroner's jury returned a verdict, "Death from injury sustained while in the employ of the Division of Highways," and the conclusion to be drawn from the testimony of all the wit-

nesses and the facts and circumstances in evidence is that there was a causal connection between Mr. Miller's death and the accident in question. His previous good health, the concurrence in time between the speedy development of his condition of ill health with the time of his accident, and the fact that a malignant growth developed immediately after the accident in question, and that the beginning thereof was evidenced by redness and swelling immediately following such accident, all lead to a conclusion that the accident was the beginning of Mr. Miller's trouble.

Dr. VanEpps stated on direct examination that he did not think that the trauma described to him in the history of the case was the essential cause of the testicular tumor; that it is not possible in a case of malignant tumor to definitely state what was the cause of the tumor; that some malignant tumors are of traumatic origin. On cross-examination he stated however that if the patient was shown to have been in good physical health prior to the time of the injury, it would have a bearing on the question; that if he was apparently in normal condition before the accident, then the accident might have played some part in the subsequent developments. That in Mr. Miller's case the malignancy did not only involve the right testicle but that the glands were involved up into the abdomen.

It further appears from the testimony of Dr. Smith that Mr. Miller suffered a loss of thirty pounds in weight during the one and one-half to two months' time following the injury.

Counsel for respondent contend that the case of *Simpson Co.* vs. *Ind. Comm.* 337 Ill. 454 cited by claimant is not applicable, but in this we cannot agree. We know that the medical profession is still earnestly seeking for knowledge as to the cause of cancer, and they are disagreed as to what may or may not cause cancer in a particular case.

In the Simpson case the court said:

"The evidence shows that prior to the day of the accident Carr was a strong, vigorous and active man. He had never been sick and had never required the services of a physician. The evidence of Hammond shows what happened at the time Carr pulled on the rope. He was never well after that time but grew steadily worse until his death. There is no question, under the evidence, but that he died from a lymphatic sarcoma. There is medical evidence which shows that the sarcoma was the result of the strain or sprain of the muscles of the back. If the death is fairly chargeable to an accident

suffered in the course of his employment as an efficient cause, compensation may be awarded although the sarcoma existed prior to the accident, provided the sarcoma was exaggerated or accelerated by the injury, but there must be a direct relation between the accident and the subsequent death. (*Springfield Coal Co.* vs. *Industrial Com.*, 303 Ill. 455; *Jones Foundry Co.* vs. *Industrial Com.*, 303 id. 410; *Keller* vs. *Industrial Com.*, 302 id. 610; *Centralia Coal Co.* vs. *Industrial Com.*, 301 id. 418.) *If the act of Carr in pulling on the rope either caused a sarcoma or aggravated or accelerated a sarcoma which already existed, and his death resulted therefrom, his widow was entitled to compensation.*"

## The court finds in the case at bar:

That Charlie R. Miller died as the result of an accident which arose out of and in the course of his employment; that at the time of his injury he was married and stood in the relationship of loco parentis to his two stepchildren, being respectively of the age of eight and ten years at the time of said accident. (See *Faber* vs. *Ind. Comm*, 352 Ill. 115.) Both of said children and their mother resided with and were wholly dependent upon the said Charlie R. Miller for support and care.

That said employee had been in the employ of respondent for less than one year and would be governed in his employment, by the statute of two hundred (200) working days per year; that his wages were Forty (40) Cents per hour on an eight-hour basis and that his annual wages would therefore be computed at Six Hundred Forty ($640.00) Dollars. That he was entitled to temporary total compensation from the date of the injury September 25, 1935 to the date of his death, October 9, 1936, or a period of fifty-four (54) weeks at the rate of Twelve ($12.00) Dollars per week.

That four times his average annual earnings would amount to Two Thousand Five Hundred Sixty ($2,560.00) Dollars which said sum is increased under the provisions of paragraph 7 (h) of the Workmen's Compensation Act to Three Thousand One Hundred ($3,100.00) Dollars as a minimum amount payable in case of death under the Act when there are two dependent children surviving.

That through the death of said employee, Charlie R. Miller, two causes of action have been created under the terms of Par. 8 (g) of the Workmen's Compensation Act—one in favor of J. Binnie Wolfe, Administrator of the Estate of Charlie R. Miller, Dec'd, for the amount due for temporary total disability to the date of the employee's death, and also for the medical and hospital bills incurred for his care; and the other in favor of his dependents, as a result of his death. (*American Steel Foundries* vs. *Ind. Comm*, 361 Ill. 582.)

That the sum of Twenty-seven ($27.00) Dollars has heretofore been paid by respondent to Dr. Harrison, leaving a balance of Twenty ($20.00) Dollars unpaid upon his bill.

We further find that the children's share of the compensation due and arising out of the death of the said Charlie R. Miller should be paid to their mother, Edith Miller, for their support.

An award is therefore hereby made in favor of J. Binnie Wolfe, Administrator of the Estate of Charlie R. Miller, Dec'd, for temporary total disability due Charlie R. Miller to the date of the · latter's death, in the sum of.................................... $648.00

To J. Binnie Wolfe, administrator of the estate of Charlie R. Miller, dec'd, for the use of the following, to-wit:

| | |
|---|---:|
| Dr. B. A. Harrison | $ 20.00 |
| Dr. Clarence VanEpps | 10.00 |
| Dr. Fred M. Smith | 50.00 |
| Dr. Nathaniel G. Alcock | 75.00 |
| For the use of University of Iowa Hospital, et al., for hospitalization | 214.00 |
| Dr. Dillon | 15.00 |
| | $384.00 |

A further award in addition to the foregoing is hereby allowed to Edith Miller for the use of herself and the said children, in the sum of $3,100.00, less the sum of $648.00, hereinabove allowed as temporary total disability compensation, payable in weekly installments at the rate of $12.00 per week, making a net award in favor of the said Edith Miller of................................ $2,452.00

Of the said sum of $2,452.00 so due the said Edith Miller, there has heretofore accrued and is due to the 10th of February, 1939, the sum of $1,452.00 which said sum is payable at this time to the said Edith Miller, leaving a balance of $1,000.00, payable in eighty-two (82) weekly installments of $12.00 each and one final installment of $16.00.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation by Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved July 3, 1938 (Sess. Laws 1938 p. 83), and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the Road Fund in the manner provided for in such Act.