In re ADOPTION OF A.W. *et al.*, Minors (R.H., Petitioner-Appellant; E.W., Petitioner-Appellee).

Second District No. 2—03—0208

Opinion filed September 4, 2003.

Margarita T. Kulys, Marvin J. Leavitt, David I. Grund, and Alyssa Mogul, all of Grund & Leavitt, P.C., of Chicago, for appellant.

Janet L. Mazurek, of Rosing, Berks, Sinton & Spannraft, of Waukegan, and Scott J. Sinton, of Berks & Sinton, Ltd., of Deerfield, for appellee.

Kathy J. DeBruyne, of Beerman & DeBruyne, of Libertyville, guardian *ad litem*.

JUSTICE KAPALA delivered the opinion of the court:

Appellant, R.H., appeals from an order of the circuit court of Lake County denying her petition under section 2—1401 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1401 (West 2002)) to vacate the trial court's order of April 5, 2002, which dismissed the adoption petition filed by her and her domestic partner, E.W., to adopt A.W., J.W., and M.W., E.W.'s biological children. R.H. also appeals from the denial of her motion for visitation, a mediation referral, and other relief. For the reasons that follow, we affirm in part and vacate in part.

## FACTS

The facts are uncomplicated. E.W. is the biological mother of three minor children conceived through artificial insemination during the period of time when R.H. and E.W. cohabited as female domestic partners who had never been married in another jurisdiction to each other. On September 22, 1999, they jointly filed a verified petition for the related adoption (750 ILCS 50/1 *et seq.* (West 1998)) of the minor

children born during their cohabitation. On October 8, 1999, the trial court appointed a guardian *ad litem*. On November 5, 2001, E.W. and R.H. filed their amended verified petition for adoption. The amended petition alleged that E.W. "[c]onsents to the adoption of the minor [*sic*] by [p]etitioners herein, and her consent is evidenced in writing by the mother signing her name to this [p]etition for [a]doption."

The next entry in the record is an order dated April 5, 2002, written by the trial court, which recited:

> "This matter coming on for hearing on motion of [E.W.], who is present in open court and the court being fully advised in the premises: IT IS HEREBY ORDERED: This matter is dismissed due to [E.W.'s] refusing to consent to the adoption by [R.H.], and the [*sic*] there being no consent by the biological mother, the petition for adoption is withdrawn and the case closed."

On October 30, 2002, R.H. filed a section 2—1401 petition to vacate the dismissal of the adoption petition. In it, she averred that, at the time each child was born, she and E.W. were domestic partners and co-parents of the three children and together had cared for the children since each child's birth. She further alleged that on November 5, 2001, she, E.W., their attorney, and the children appeared in open court "for the presentation of the [v]erified [p]etition and entry of appropriate [o]rders." At the same court appearance, R.H. averred, she, E.W., and the children were taken into the trial court's chambers where the trial judge brought out toys for the children "and waved a 'magic wand' for the children, indicating verbally that the adoption was final." R.H. stated her belief that the adoption was final at that time. The record, however, contains no final order of adoption for that or any other date.

In approximately August 2002, E.W. informed R.H. that the adoption had never been made final. On October 30, 2002, R.H. filed a section 2—1401 petition seeking to vacate the order dismissing the cause. In her petition she alleged she did not receive notice that E.W. was going to appear in court *ex parte* and withdraw her consent to the adoption. R.H. also prayed for reinstatement of the adoption petition. On December 13, 2002, R.H. filed a motion for visitation and other relief. On January 28, 2003, the trial court denied all relief. The trial court in its order specifically stated that R.H. lacked standing to bring the motion for visitation and that, as E.W.'s right to withdraw her consent to the adoption was absolute, no notice of the dismissal of the proceedings was necessary. R.H. timely filed this appeal.

## DISCUSSION

■ R.H.'s first contention is that the trial court abused its discretion when it denied her section 2—1401 petition to vacate the dismissal of the adoption petition and for reinstatement. The trial court found

that, since E.W. had the absolute right to withdraw consent, no notice was necessary. We disagree. R.H. was a party and was entitled to notice. Rule 2.01(g) of the Nineteenth Judicial Circuit requires that written notice of the hearing of all motions shall be given by the party requesting the hearing to all parties who have appeared and who have not been defaulted. 19th Jud. Cir. Ct. R. 2.01(g) (eff. January 2, 1997). Supreme Court Rule 104(b) provides that papers required to be filed with the clerk shall be filed with a certificate of service with proof that copies have been served on all parties who have appeared and are not in default. 134 Ill. 2d R. 104(b).

E.W. contends that she gave notice of her intent to withdraw her consent to the parties' attorney, who failed to convey this information to R.H. She does not indicate whether she advised her attorney orally or in writing. Nevertheless, E.W. argues, her statement of intent to her attorney constituted notice to R.H. E.W. cites no authority for this proposition, and we find no basis to conclude that legally sufficient notice was given. A mere statement of her intent is not notice of court action.

In any event, E.W. did not give written notice as contemplated by the local rule, nor did she file a certificate of service as required by Rule 104(b). We have combed the record and find no notice of motion or other document that could be construed to have given R.H. legally sufficient notice that the adoption petition would be dismissed. Therefore, we agree with R.H. that she did not receive notice.

■ The effect of the lack of notice was to render the order dismissing the petition void. See *In re Estate of Gustafson*, 268 Ill. App. 3d 404, 409 (1994). Prior to entry of a new order, a party must give notice that a motion will be presented to the court. *Maras v. Bertholdt*, 126 Ill. App. 3d 876, 881 (1984). An order entered without notice is void. *Maras*, 126 Ill. App. 3d at 881. See also *Vortanz v. Elmhurst Memorial Hospital*, 179 Ill. App. 3d 584, 589 (1989). "At a minimum, procedural due process requires notice, an opportunity to respond, and a meaningful opportunity to be heard." *Gustafson*, 268 Ill. App. 3d at 409. While R.H. does not challenge this order on precisely this basis, "courts have an independent duty to vacate and expunge void orders and thus may *sua sponte* declare an order void." *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160, 166 (2002). A void order or judgment may be attacked at any time or in any court either directly or collaterally and without any showing of diligence or meritorious defense. *Dec v. Manning*, 248 Ill. App. 3d 341, 347 (1993). Therefore, we need not address R.H.'s arguments made pursuant to section 2—1401. Accordingly, we vacate the trial court's order of April 5, 2002.

We are aware that the First District of the Appellate Court has

questioned the validity of our decisions in *Maras* and *Vortanz*. See *Mortimer v. River Oaks Toyota, Inc.*, 278 Ill. App. 3d 597, 602 (1996) ("We view the decisions in these cases as questionable in light of the specific holdings of our supreme court that only orders entered by a court lacking jurisdiction over the person of a party or the subject matter of the litigation are 'void' "). The Fifth District in *Hartman v. Pittsburgh Corning Corp.*, 261 Ill. App. 3d 706, 727 (1994), commented on the divergence of cases on this subject and declined to hold void an order editing a deposition where objections to the edited portions of the deposition were not served on the defendant. However, significantly, *Hartman* pointed out that the defendant had knowledge that both of the other parties were filing motions objecting to portions of the deposition, and there was no surprise or prejudice to the defendant. *Hartman*, 261 Ill. App. 3d at 727. The Third District in *In re Parentage of G.D.M.*, 220 Ill. App. 3d 182 (1991), dismissed an appeal from an order the State argued was void for lack of service of notice because the effect of the order was to leave the original action pending and, the court reasoned, there was no final and appealable order from which it could obtain jurisdiction. *G.D.M.*, 220 Ill. App. 3d at 183. But the dissent noted that the majority accepted the determination that the order was void "without question." *G.D.M.*, 220 Ill. App. 3d at 184.

We remark in passing that the Seventh Circuit Court of Appeals has taken the view that a judgment rendered without notice is void. "A judgment may be deemed void if the court that rendered the judgment acted in a manner inconsistent with due process of law. [Citation.] Generally, due process requires that all litigants be given notice and an opportunity to be heard. [Citation.]" *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 423 (7th Cir. 1998). Quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657 (1950), the court observed, " 'An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Grun*, 163 F.3d at 423.

The opinions of any branch of the appellate court are binding on all circuit courts across the state, but not on the other branches of the appellate court. *Garcia v. Hynes & Howes Real Estate, Inc.*, 29 Ill. App. 3d 479, 481 (1975). We are obliged to follow the precedents of our supreme court. *People v. Goebel*, 284 Ill. App. 3d 618, 624 (1996). However, it is required of us to examine our supreme court's opinions carefully to determine their breadth or narrowness of applicability in

the context of other cases bearing on the subject and the factual situation in the case pending before us. See *Application of County Treasurer*, 130 Ill. App. 2d 296, 297 (1970).

We disagree with the First District's conclusion that our supreme court has limited void orders to those entered without jurisdiction of the parties or the subject matter. *Mortimer* singled out two supreme court decisions, *Buford v. Chief, Park District Police*, 18 Ill. 2d 265 (1960), and *Baker v. Brown*, 372 Ill. 336 (1939). *Mortimer*, 278 Ill. App. 3d at 602. The plaintiff in *Buford* was defaulted on a traffic ticket in the municipal court but filed a civil complaint attacking the Chicago Park District's authority to enact the ordinance under which her car was seized for a parking violation. *Buford*, 18 Ill. 2d at 271. Our supreme court held that the civil suit amounted to an impermissible collateral attack on a default judgment entered in a criminal proceeding. *Buford*, 18 Ill. 2d at 271. "Judgments by default, entered by the municipal court, and in a criminal proceeding, are protected against collateral attack." *Buford*, 18 Ill. 2d at 271. *Buford* did say, "A judgment entered by a court in which there is a total want of jurisdiction or which lacks inherent power to make or enter the particular order involved is void and subject to collateral attack." *Buford*, 18 Ill. 2d at 271. We do not read this to mean that orders are void *only* where there is a lack of jurisdiction. In *Baker*, our supreme court gave full faith and credit to an Oklahoma judgment. *Baker*, 372 Ill. at 339-40. In that case the parties admitted that the Oklahoma court had general jurisdiction of the subject matter of the suit and that the court had jurisdiction of the person of the defendant by personal service. *Baker*, 372 Ill. at 340. The defendant argued that the Oklahoma court lacked jurisdiction for the reason that the pleadings were insufficient to support the amount of the judgment. *Baker*, 372 Ill. at 340. Our supreme court reiterated the general rule that a judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to collateral attack. *Baker*, 372 Ill. at 340. Neither *Buford* nor *Baker* considered the issue of a procedural due process challenge to a judgment entered without notice.

While the Fifth District in *Hartman* appears to have taken the same tack as the First District, we simply point out that *Hartman* is distinguishable from our case. There, the defendant knew that the other parties were filing objections to the deposition. *Hartman*, 261 Ill. App. 3d at 727. In our case, R.H. had no knowledge of the impending court action. Therefore, we continue to follow our decisions in *Maras* and *Vortanz*.

R.H.'s second contention is that she has standing to bring the mo-

tion for visitation and a mediation referral because, she argues, she is a *de facto* parent or, in the alternative, she stands *in loco parentis* to E.W.'s three children. R.H. acknowledges that the First District of the Appellate Court in *In re Visitation with C.B.L.*, 309 Ill. App. 3d 888, 894 (1999), decided these issues against her position. She urges us to come to the opposite conclusion and to decline to follow *C.B.L.* R.H. instead relies on *Faber v. Industrial Comm'n*, 352 Ill. 115 (1933), and *In re Parentage of M.J.*, 203 Ill. 2d 526 (2003).

■ The question of standing here is a matter of law, which this court reviews *de novo*. See *Kankakee County Board of Review v. Property Tax Appeal Board*, 316 Ill. App. 3d 148, 151 (2000).

We first will discuss *C.B.L.* The facts of that case are nearly identical to those in our case. In 1984, the petitioner met the respondent and a long-term lesbian relationship ensued. *C.B.L.*, 309 Ill. App. 3d at 889. In 1993, the respondent was artificially inseminated, which resulted in C.B.L.'s birth. *C.B.L.*, 309 Ill. App. 3d at 889. The petitioner was dutifully involved in the preparation for the birth and thereafter in C.B.L.'s care until her relationship with the respondent ended in 1995. *C.B.L.*, 309 Ill. App. 3d at 889. When the respondent refused the petitioner all contact with C.B.L., the petitioner petitioned the circuit court to grant her visitation pursuant to section 607 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/607 (West 1998)). *C.B.L.*, 309 Ill. App. 3d at 889. The respondent moved to dismiss the petition for lack of standing. The petitioner answered, claiming that as a former lesbian life partner of the respondent, she was a *de facto* parent or an individual *in loco parentis* to C.B.L. *C.B.L.*, 309 Ill. App. 3d at 890. The appellate court affirmed the trial court's dismissal of the petition. *C.B.L.*, 309 Ill. App. 3d at 889. The appellate court concluded that, over its many and complex amendments since its original enactment, section 607 of the Marriage Act is no longer a codification of prior common law, but is now to be understood and construed as superseding and supplanting the common law of visitation in Illinois. *C.B.L.*, 309 Ill. App. 3d at 894. Therefore, the court reasoned, standing for visitation must be found solely within the specific provisions of section 607. *C.B.L.*, 309 Ill. App. 3d at 894. Since the petitioner conceded that section 607 did not afford her standing, the petition for visitation was properly dismissed. *C.B.L.*, 309 Ill. App. 3d at 894.

In opposition to *C.B.L.*, R.H. advances two theories. First, she urges us to apply *Farber*. *Farber* is a 1933 case construing the Workmen's Compensation Act (Ill. Rev. Stat. 1933, ch. 48, par. 138 *et seq.*). The issue was whether the claimant, who raised the deceased but was no blood relation and had not adopted him, was eligible to

receive compensation for his accidental injuries arising out of and in the course of his employment. *Farber*, 352 Ill. at 116-17. Our supreme court held that the claimant was so entitled because she stood *in loco parentis* to the deceased for purposes of the Workmen's Compensation Act. *Farber*, 352 Ill. at 120. *Farber* decided only that the petitioner was entitled to the deceased's compensation because she was dependent on him for her support at the time of his death, which occurred at a time and place and under circumstances that rendered his death compensable under the Workmen's Compensation Act. *Farber*, 352 Ill. at 123. "Under these circumstances," *Farber* concluded, the holding that the petitioner was entitled to compensation was affirmed. *Farber*, 352 Ill. at 123. We do not believe that *Farber* dictates a result different from that reached in *C.B.L.* It does not present the issue of standing to bring a petition for visitation, and it was limited to the facts there presented.

R.H.'s second theory is that more recently, and since *C.B.L.*, our supreme court has examined the relationship of couples to children conceived through artificial insemination in such a manner as to invalidate the holding in *C.B.L.* In *M.J.*, our supreme court interpreted the Illinois Parentage Act (the Parentage Act) (750 ILCS 40/1 *et seq.* (West 1998)). Specifically, the court addressed two issues: (1) whether the husband's consent to artificial insemination must be in writing as a prerequisite for invoking the protections of the Parentage Act (*M.J.*, 203 Ill. 2d at 535); and (2) whether, where there is no written consent for the procedure, the Parentage Act precludes common-law claims for child support (*M.J.*, 203 Ill. 2d at 540).

*M.J.* involved a heterosexual unmarried couple, Raymond and Alexis, who could not conceive children. *M.J.*, 203 Ill. 2d at 530. By agreement, Alexis was artificially inseminated and twin boys were born to the couple. *M.J.*, 203 Ill. 2d at 531. When the relationship ended, Raymond stopped supporting the children. *M.J.*, 203 Ill. 2d at 531. Alexis brought common-law claims for child support as well as for support under the Parentage Act. *M.J.*, 203 Ill. 2d at 531. Because Raymond did not execute a written consent for the artificial insemination procedure, our supreme court determined that the Parentage Act did not pertain and refused to decide whether the Parentage Act applies to unmarried persons. *M.J.*, 203 Ill. 2d at 537. Alexis's common-law claims for support were recognized, however, even in the absence of a legally declared parent-child relationship, because of the high court's responsibility and duty to ensure that the rights of children are adequately protected and to prevent children born by artificial insemination from becoming charges of the state. *M.J.*, 203 Ill. 2d at 539-41. *M.J.* did not touch upon visitation issues. The crux of the

holding in *M.J.* was that "[r]egardless of the method of conception, a child is born in need of support." *M.J.*, 203 Ill. 2d at 541. *M.J.* is not a sweeping revamping of Illinois law and does not speak to the issues raised here. It certainly does not extend *de facto* or *in loco parentis* status to one in R.H.'s situation. In *M.J.*, our supreme court stated, "Our holding is limited to the unique circumstances of this case." 203 Ill. 2d at 542.

■ We agree with the holding in *C.B.L.* that, if standing for visitation is to be found, it is within the provisions of section 607 of the Marriage Act. R.H. does not argue that she has standing under that section. We decline to go where the legislature has not led. Accordingly, the trial court did not abuse its discretion in denying her petition for visitation and mediation referral.

The judgment of the circuit court of Lake County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

HUTCHINSON, P.J., and McLAREN, J., concur.